The AMERICAN SECURIT COMPANY,
Plaintiff,

v.

SHATTERPROOF GLASS CORPORA-
TION, Defendant.

Civ. A. No. 1691.

United States District Court
D. Delaware.

July 19, 1957.

Rehearing Denied Sept. 18, 1957.

See also 20 F.R.D. 196.

States of America, as plaintiff, and Libbey-Owens-Ford Glass Company, Pittsburgh Plate Glass Company, American Window Glass Company, Fourco Glass Company, Franklin Glass Company, National Glass Distributors Association, Rolland Glass Company, American Securit Company, and Blue Ridge Glass Corporation, as defendants.

In part, the decree provided the American Securit Company, one of the corporate defendants, was enjoined from adhering to any agreement providing for a license under any patent relating to the manufacture of flat glass, upon the condition the other party had to accept a license under any other patent owned by any of the defendants in that action. Also, the defendants were to grant to each applicant a non-exclusive license under their patents and were enjoined from including any restriction or condition in any license granted by such defendants, with certain exceptions. Upon receipt of a written request for a license, a defendant was to advise the applicant in writing of the royalty which it deemed reasonable for the patent or patents to which the request pertained. If the parties could not agree upon a reasonable royalty within sixty days from the date the request for the license was received by a defendant, the applicant could apply forthwith to the Ohio Court for the determination of a reasonable royalty. The burden of proof would rest on the owner of the patent to establish the reasonableness of the royalty demanded and the court determination would apply to the applicant and all other licensees under those patents. Pending the completion of negotiations, or any such proceeding, the applicant would have to make use of the patents to which its application pertained without payment of royalty or other compensation, subject to the right of such defendant, or the applicant himself, to apply to the court to fix an interim royalty rate from the date of the filing of the application.

H. Eugene Savery, Wilmington, Del., John L. Seymour (of Bauer & Seymour), New York City, and Joseph W. Burns (of Fulton, Walter & Halley), New York City, for plaintiff.

Caleb S. Layton (of Richards, Layton & Finger), Wilmington, Del., and William C. McCoy and William C. McCoy, Jr. (of McCoy, Greene & TeGrotenhuis), Cleveland, Ohio, for defendant.

LEAHY, Chief Judge.

Plaintiff sues for infringements of certain patents concerning the tempering of glass. Defendant moved for summary judgment under Fed.Rules Civ.Proc. rule 56, 28 U.S.C. There is no genuine issue as to the material facts. The question before the court is one of law. A brief sketch of the historical background of this litigation is necessary.

1. On October 30, 1948, a final judgment in the form of a consent decree was filed in the District Court of the United States for the Northern District of Ohio, Western Division, by Judge Kloeb. The government had charged violation of the anti-trust statutes. The parties consenting were the United

2. Correspondence between the present parties in the suit at bar, which has been stipulated of record, indicates a se-

ries of negotiations took place between plaintiff and defendant here with respect to defendant's licensing of plaintiff's patents. The negotiations were opened by defendant on March 20, 1951. On March 7, 1955, almost four years later, plaintiff brought suit in this court against defendant for alleged patent infringement and unfair competition. Defendant's answer denied all counts of infringement, challenged the validity of plaintiff's patents, asserted as a first defense misuse of patents, and, as a second defense, royalty free license under the Ohio decree. Defendant here also counterclaimed for a declaratory judgment.[1]

On July 25, 1955, an application was filed by defendant in the Ohio Court for the determination of royalty fees pursuant to that Court's final judgment entered October 30, 1948. Then, on October 6, 1955, the Attorney-General of the United States petitioned the Ohio Court for orders for the construction and enforcement of the Ohio decree and judgment. Hearing on these matters was had on October 19, 1955. On December 13 the Court refused to take jurisdiction in view of the proceedings here, and ordered a dismissal of both the application and the petition of the Attorney-General. As of the present date, the paper record shows defendant is not working under any license of plaintiff corporation.

3. Counts I through IV of the Complaint relate to defendant's alleged infringements of plaintiff's patents, Mosmieri, et al., No. 2,131,406, Despret No. 2,167,294, Eckert No. 2,093,040, and Long No. 2,303,749. Counts V and VI relate to the allegations of unfair competition and fraud on the part of defendant. The motion for summary judgment seeks merely dismissal of Counts I through IV.

4. Preliminarily, there is plaintiff's motion to strike the affidavits of Mr. William C. McCoy, Jr., and Mr. William C. McCoy, attorneys for defendant, supporting defendant's motion for summary

judgment. F.R. 56(e) tests the sufficiency of evidentiary affidavits on a summary judgment motion for form and content. It requires affidavits to be made on personal knowledge, to set forth such facts as would be admissible in evidence, and to show affirmatively the affiant is competent to testify to the matters stated therein.

The affidavit of Mr. William C. McCoy, Jr., describes a conference between the affiant and Mr. Vernon M. Dorsey, a lawyer and then Secretary of the plaintiff, The American Securit Company, held for the purpose of negotiating for a patent license from plaintiff to defendant, Shatterproof Glass Corporation. Part of that affidavit alleges the good faith of the position taken by defendant during the course of negotiations. The affidavit of Mr. William C. McCoy traces the steps of defendant's legal stand, including Shatterproof's negotiations with another defendant (under the Ohio judgment) from whom licenses for several patents, including those relating to the tempering of glass, were granted on an individual basis.

I conclude the supporting affidavit of William C. McCoy and part of the supporting affidavit of William C. McCoy, Jr., are not material to the issues raised by defendant in its motion for summary judgment.[2] They will be disregarded. As to the remainder of the supporting affidavit of William C. McCoy, Jr., plaintiff's motion to strike is denied.

Plaintiff does not attack part of this affidavit on the ground of affiant's lack of personal knowledge. Furthermore, plaintiff concedes the facts set forth are material to the issue of its licensing policy and would be admissible in evidence. What is challenged is affiant's competency to testify to those facts by reason of his position as attorney for defendant on whose behalf the affidavit was offered, and the circum-

1. Plaintiff's motion to dismiss defendant's first and second defense was denied by my Opinion-Letter of May 25, 1956, pp. 5–7.

2. See 6 Moore, Federal Practice pp. 2328–2329.

stance that the other member of the conference, Vernon M. Dorsey, is now deceased. F.R. 43(a) directs the competency of a witness to be determined in like manner with the admissibility of evidence; in other words, the statute or rule which favors the reception of the evidence governs.[3] Absent any existing federal competency statute and no distinctive equity rule having previously evolved, this court must look to the law of the State of Delaware as its guide.

Under statutory provision (and most states handle this problem by statute), there can be no disputing an attorney's right to testify, hence to submit his own affidavit.[4] I refer to § 4302 of Title 10 of the 1953 Delaware Code, which, in effect, refutes the common law rule under which Pritchard v. Henderson,[5] relied upon by plaintiff, was decided, and which provides, in part: "No person shall be incompetent to testify in any civil action or proceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined." Further objection is made by plaintiff that William C. McCoy, Jr., attorney for defendant, seeks to testify to matters contained in a conversation with an officer, Vernon M. Dorsey (then Secretary), now deceased, of plaintiff. Plaintiff thus alludes to the concluding sentence of § 4302, which is commonly referred to as the "Dead Man Statute". It states: "In actions or proceedings by or against executors, administrators or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party."

As a qualification of the statutory abrogation of the common law rule that parties or interested persons are incompetent to testify, this blind concession to the past should be strictly construed. The Delaware legislature expressly states that before the Dead Man Statute can register a "party" incompetent, the action must be one "by or against executors, administrators or guardians in which judgment may be rendered for or against them". This limitation was woven into the decision of Lake Shore National Bank v. Bellanca Aircraft Corporation by Judge Rodney of this court.[6] In that case Lake Shore National Bank was executor under a will and brought an action against a corporate defendant. At the trial the Treasurer and Secretary of defendant corporation were asked certain questions involving transactions with the testator in his lifetime. Judge Rodney, following what was considered to be the rule established by the Delaware state courts, although admittedly outside the great weight of authority, held that where a corporation is party to a suit by or against an executor or administrator the officers of such corporate party are incompetent to testify as to transactions with the testator or intestate. Thus, although the term "party" in that case was extended to include the officer of the corporate defendant and invoke the disqualification provision of the statute, suit there was instituted by an executor seeking judgment in his favor. This is not the case for decision here. The Delaware Dead Man Statute is, therefore, manifestly inapplicable. This is in line with the better view regarding former common law rules of incompetency simply as grounds for impeaching the credibility of a witness, so that any objection would go to the weight of the testimony rather than to its admissibility.

---

3. 5 Moore, Federal Practice, pp. 1330–1331.

4. Also see Graham v. Pennsylvania R. Co., D.C.Ohio, 13 Fed.Rules Serv. 56e.1, Case 1, cited in 6 Moore, Federal Practice, p. 2330.

5. 3 Pennewill, Del., 128, 50 A. 217, 221–222.

6. D.C.Del., 83 F.Supp. 795, affirmed per curiam 3 Cir., 178 F.2d 923, dealing with a similar provision of the 1935 Code, § 4687. Also see Wright v. Barnard, D.C. Del., 248 F. 756, 776–779.

5. Defendant's position on its summary judgment motion is two-fold: 1. Unenforceability of plaintiff's patents because of (a) misuse, and (b) violation of the terms of the consent decree, and 2. Defendant's right to use the patents during the period of negotiations with plaintiff without payment of royalty by virtue of the provisions of the consent decree.

6. Defendant contends plaintiff has followed a policy of licensing which constitutes a misuse of its patent monopoly, and, therefore, plaintiff is barred from enforcing its patents at this time in an infringement action. No dispute exists as to the policy pursued by plaintiff in licensing its patents. This policy is set out in plaintiff's standard form of license agreement.[7] It provides for a grant of license on all of its patents related to the industry for the specific royalty of 2¢ per square foot of glass manufactured and sold by the licensee. Plaintiff's proposed license also provides for the termination of the license agreement by the licensee at any time after one year from the date of signing by the giving of 30 days' notice in writing to the licensor. The correspondence between the parties and other papers indicate this policy has not been subject to variance, in that plaintiff has consistently refused to license individual patents;[8] and, although it has, when pressed, offered to do so, it has, at the same time, demanded in payment the same royalty rate as that provided for in the group or package-license.[9]

■ The crux of the legal question is to determine whether plaintiff's policy of licensing constitutes a misuse of its patents. The Supreme Court has said mere accumulation of patents is not, of itself, illegal, nor is it *per se* a misuse to measure consideration for a license under any and all patents related to the industry by a percentage of the licensee's sales, even though none of the patents may in fact be used by the licensee.[10] But the Court stated it was *not* confronted with the contention that the licensor refused to grant a license under one or more of its patents unless a license was taken under all.[11] Thus, the Supreme Court refused to apply the principle of the so-called "tie-in" cases, of which the Court in an earlier decision

---

7. License agreement accompanying letter of Robert Ingouf, Vice-President and Treasurer of plaintiff corporation, to W. B. Chase, President of defendant corporation, dated May 28, 1951, of the stipulated correspondence between the parties.

8. See the stipulated correspondence between the parties; Ingouf Dep. pp. 120, 121; Ingouf Dep. Ex. 18; Affidavit of William C. McCoy, Jr., submitted in support of defendant's motion.

9. See letter of V. M. Dorsey, Esq., former counsel and Secretary of plaintiff, to William C. McCoy, Esq., counsel for defendant, dated January 5, 1954, of the stipulated correspondence between the parties.

10. Automatic Radio Manufacturing Co., Inc., v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, affirming 1 Cir., 176 F.2d 799 (one Judge dissenting), affirming D.C.Mass., 77 F. Supp. 493. The petitioner entered into a license agreement with Hazeltine whereby petitioner could make use of all patents held or acquired by Hazeltine at a royalty rate fixed on a sales percentage and regardless of use of the patents. The petitioner argued the license agreement could not be enforced since it was a misuse of patents to require the licensee to pay royalties based on a percentage of the sales of its patents when none of the patents are used. Six members of the Supreme Court (opinion by Justice Minton) found no inherent extension of the monopoly of the patent. The dissent of Justice Douglas, concurred in by Justice Black, reasoned that since the petitioner was obligated to pay as royalty a percentage of its total sales without regard to whether or not the products sold were patented or unpatented, the patentee received royalties on unpatented as well as patented products to obtain a larger monopoly of the market than the statute permits.

11. This contention, included by petitioner in support of its motion for summary judgment, was not pressed on appeal, and, in any event, was found not properly supported by the record, 339 U.S. 827, 831.

dealing with copyright block-booking, held illegal a refusal to license one or more copyrights unless another copyright was accepted under an additional consideration.[12]

■■ The record here demonstrates the applicability of that principle. The policy of plaintiff to grant no license unless it is under all its patents for a fixed royalty, is one of unlawful coercion contrary to public policy as announced by the courts.[13] And, it can not be said by plaintiff in answer that its practice of group or package-licensing was designed merely to suit its business convenience. Convenience to the patent owner can never justify an unlawful use of the patent monopoly. In this field, a reward granted to an inventor is important, only insofar as it serves to release to the public the product of his genius. That service ceases to be rendered when the reward no longer can be found to relate to the quality of each patent. In such event one patent cannot draw strength from the others and the monopoly of each thus be extended.

7. Plaintiff relies upon the termination clause of the license agreement as a redeeming feature of its patent monopoly. I do not so consider it. As read, the termination provision works an equal, even more aggravating, hardship upon the licensee in that, when invoked, it demands the renunciation of all patents —wanted and unwanted—under the license.[14]

8. Plaintiff then attempts to avert the impact of misuse by arguing, since under its package license the royalty for all patents is the same as for any one, with no increased rate imposed, its package license in no way requires an applicant to accept, under the burden of an added consideration, a license under one patent on condition he accept a license under another. I find plaintiff's offer to license its patents individually was never an alternative to its original, controlling policy to grant a license only under all its patents. Rather it was added by plaintiff in the later stages of its negotiations with defendant in the present case to counteract the harshness of plaintiff's position by seemingly meeting the demand of defendant in that regard. Although this offer may be said, on the surface, to treat of individual patents, its design was evident—a catalyst to encourage the licensing of all patents at the same fixed rate—and its result the same—unlawful coercion on the licensee to accept unwanted patents and an illegal extension of the patent monopoly.

I thus find no significant difference between, on the one hand, conditioning the granting of a license under one patent upon the acceptance of another for an additional consideration, a practice the Supreme Court has condemned, and, on the other, as here, granting a license only under all patents at a fixed rate, or under any one patent at the same rate, which is, in effect, equivalent to apportioning the fixed rate amongst all the patents and then requiring the applicant to take a license under all if he wishes to have a license under one. In either case plaintiff's policy is inexorable. Plaintiff having failed to "purge"[15] the

12. United States v. Paramount Pictures, Inc., 334 U.S. 131, 156–159, 68 S.Ct. 915, 92 L.Ed. 1260, affirming D.C.N.Y., 66 F. Supp. 323.

13. 15 U.S.C.A. §§ 1 and 2. See Apex Electrical Mfg. Co. v. Altorfer Bros. Co., D.C.Ill., 130 F.Supp. 152, 154–156, 159; Hazeltine Research, Inc., v. Avco Mfg. Corp., 7 Cir., 227 F.2d 137, 146–149; and Baker-Cammack Hosiery Mills, Inc. v. Davis Co., 4 Cir., 181 F.2d 550, 568–573.

14. Paragraph 7 of plaintiff's standard form of license agreement provides:

"The licensee may surrender its license hereunder and terminate this agreement at any time after one (1) year from the date hereof by giving the Licensor thirty (30) days' notice in writing of the Licensee's intention so to do."

15. See, in this regard, United States Gypsum Co. v. National Gypsum Co., 352 U.S. 457, 77 S.Ct. 490, 1 L.Ed.2d 465, reversing and remanding United States v. United States Gypsum Co., D.C.D.C., 124 F.Supp. 573.

misuse of its patents, is barred from enforcing them in its infringement action in this court.

■ 9. I will consider, as well, whether this court as other than the court entering a final judgment via consent decree, has jurisdiction to determine a violation of the latter's decree, whether the terms of plaintiff's standard form of license agreement violate the terms of the decree to which it consented, and, if it does, whether violation renders the patents unenforceable in an action for infringement.

Plaintiff takes the position only the Ohio Court, which retained jurisdiction,[16] should interpret the Ohio judgment. The retention of jurisdiction by the Ohio Court does not exclude by implication in this court the recognition of plaintiff's obligations under the decree. The Ohio Court acceded to this view when it declined to accept jurisdiction both on the application of defendant (to fix royalty fees) and the petition of the Attorney-General (to enforce the consent decree). This court now has competence at this juncture to test plaintiff's adherence to its obligations in so far as it may prejudice recovery in this infringement action. If the decree is wrongly interpreted, or the consequences which flow therefrom are wrongly judged, the power rests with a higher body to set it straight.[17]

■ The final judgment of the Ohio Court was not an adjudication of issues of fact or law in that action. It did not constitute evidence or admission of any such issue.[18] Nevertheless, since a violation of the laws of the United States was in issue in the Ohio proceedings, the provisions of its decree, to which the United States consented, became a declaration of public policy to govern the future behavior of the named defendants. The master fact, then, is that plaintiff, a defendant in that action, consented to the entry of judgment and it thereby assumed obligations with respect to the licensing of its patents. It follows, if under the terms of its licensing agreement, plaintiff violated the terms of the decree, plaintiff must be prevented from enforcing its patents in an action for infringement such as in the instant case here. This is in keeping with time-honored principles of equity. Defendant, as a prospective licensee, has shown itself as a corporate personality within the purview of the decree. Clearly, it may seek its protection here.

■ 10. Passing to precise questions of violation, I find the terms of the standard form of license agreement employed by present plaintiff, The American Securit Company, is in conflict with Paragraph XIV B and Paragraph XVII (1) (a) of the Final Judgment rendered in C.A. 5239 in the District Court of the United States for the Northern District of Ohio, Western Division, between The United States of America, plaintiff, and Libbey-Owens-Ford Glass Company et al.,

16. Paragraph XXXI of the Final Judgment provides:
"Jurisdiction is retained for the purpose of enabling any of the parties to this judgment to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this judgment or for the modification or termination of any of the provisions thereof, and for the purpose of the enforcement of compliance therewith and the punishment of violations thereof."

17. See Hughes v. United States, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394; United States v. Liquid Carbonic Corpora-

tion, D.C.N.Y., 121 F.Supp. 141, 123 F. Supp. 653, reversed and remanded per curiam in 350 U.S. 869, 76 S.Ct. 114, 100 L.Ed. 769.

18. Page 1 of the Final Judgment provides, in part:
" * * * the plaintiff and said defendants by their attorneys having severally consented to the entry of this Final Judgment herein, without adjudication of any issue of fact or law herein and without this judgment constituting evidence or admission in respect of any such issue;
"Now, therefore, without adjudication of any issue of fact or law herein, and upon consent as aforesaid of all the parties hereto and not upon evidence, * * * ".

defendants. Paragraph XIV B of the decree forbids the inclusion of any restrictions or conditions whatsoever in any license granted by the corporate defendants, except certain enumerated ones.[19] The terms of plaintiff's standard licensing form impose a condition heretofore described,[20] which clearly is not within the scope of any of the excepting provisions. Consequently, it is the type of condition which the Ohio decree was designed to combat. Plaintiff, in this regard, further violates Paragraph XVII (1)(a), which specifically prohibits the licensing of any patent upon the condition that the licensee shall accept a license under any other patent owned or controlled by the licensor.[21] The argument of plaintiff that any variance in its licensing policy in defendant's favor, or otherwise, would have resulted in discrimination against the existing licensees[22] is without merit. While I appreciate the sensitiveness of a licensor not to discriminate among licensees, it has not been demonstrated by heeding defendant's wishes for the licensing of

individual patents at royalty rates distinct from the package rate, plaintiff would have traveled the sure road to discrimination. On the contrary, such a change by plaintiff in its licensing policy would have been in line with its legal obligations under the Ohio consent decree.

I conclude, therefore, plaintiff's standard form of license agreement violates the terms of the consent decree rendered by the Ohio Court, and defendant, here, may assert the violation of that decree as a defensive shield to ward off the infringement action of plaintiff in this court.

11. These findings make it unnecessary to decide defendant's final contention, except to note that the provisions of the Ohio judgment dealing with the court's determination of reasonable royalty rates and interim royalty rates seem to be expressed in terms of prior filing of an application. The difficulty is that, read apart, the filing of the application appears to be permissive and not mandatory upon the applicant. In the event no

19. Paragraph XIV B of the Final Judgment provides:

"Each corporate defendant is hereby enjoined and restrained from including any restriction or condition whatsoever in any license or sublicense granted by it pursuant to the provisions of this Section except that (1) the license may be non-transferable; (2) a reasonable non-discriminatory royalty may be charged; (3) reasonable provisions may be made for periodic inspection of the books and records of the licensee by an independent auditor or any person acceptable to the licensee who shall report to the licensor only the amount of the royalty due and payable; (4) reasonable provision may be made for cancellation of the license upon failure of the licensee to pay the royalties or to permit the inspection of his books and records as hereinabove provided; (5) the license must provide that the licensee may cancel the license at any time after one year from the initial date thereof by giving thirty days' notice in writing to the licensor."

20. See the text surrounding note 2, supra.

21. Paragraph XVII (1) (a) of the Final Judgment provides, in part:

"The corporate defendants are several-

ly and jointly enjoined and restrained from entering into, adhering to, maintaining, furthering, or renewing, directly or indirectly, any contract, agreement, understanding or arrangement which provides for:

"(1) a license * * * under any patent; * * * relating to the manufacture of flat glass, upon the condition or requirement that the other party thereto shall:

"(a) * * * accept a license * * * under any other patent owned or controlled by any defendant."

22. Licensees operating under plaintiff's standard form of license include Libbey-Owens-Ford Glass Company, Conaname, Inc., Pittsburgh Plate Glass Company, West Penn Mirror Company, Permaglass, Inc., Corning Glass Works, and Eagle Convex Glass Specialty Company. See letter of V. M. Dorsey to W. B. Chase, dated March 19, 1953, of the stipulated correspondence; the Affidavit of Robert Ingouf in this action; and the Transcript of Proceedings in Ohio on Defendant's Application For Royalty Fees, p. 46.

application is filed, the inference, then, is these provisions cannot be brought into play, with the result that implementation of the decree becomes seriously impaired.

For the foregoing reasons, defendant's motion for summary judgment as to Counts I through IV of the Complaint, is granted. An appropriate order may be submitted but only after there is a determination by trial, or otherwise, of the remaining counts in plaintiff's complaint.

On Motion for Rehearing

By opinion of July 19, 1957, the Court granted defendant's motion for summary judgment as to Counts I through IV of the Complaint.

On September 10, 1957, plaintiff filed a motion for rehearing and that the summary judgment be set aside.

Plaintiff's motion having been studied by the Court, it is

Ordered:

The motion for rehearing and that the summary judgment be set aside, is denied.