The **AMERICAN SECURIT COMPANY,**
a corporation, Plaintiff-Appellant,

v.

**HAMILTON GLASS COMPANY, Inc., a**
corporation, et al., Defendants-
Appellees.
No. 12162.

United States Court of Appeals
Seventh Circuit.
April 24, 1958.

John Seymour, Bauer & Seymour, New York City, Joseph W. Burns and Fulton, Walter & Halley, New York City, Samuel E. Beecher, Jr., Terre Haute, Ind., for appellant.

Milton Miller, Howard R. Koven and Henry H. Koven, Chicago, Ill., Koven, Koven, Salzman & Homer, Chicago, Ill., and Byron, Hume, Groen & Clement, Chicago, Ill., of counsel, for appellees.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff sued Hamilton Glass Company and others for alleged infringement of eight patents. To plaintiff's amended complaint, defendants filed a second amended answer denying infringement and affirmatively alleging invalidity of the patents and misuse thereof by plaintiff. They also sought by an amended counterclaim a declaratory judgment of invalidity and noninfringement and an injunction for attempted monopolization and restraint of trade in violation of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note.

Both sides moved for summary judgment and to strike the exhibits submitted by the opposite side. All of these motions were denied by the court, except defendants' motion for summary judgment, which was granted. From that judgment plaintiff has appealed to this court.

1. Defendants' motion for summary judgment under rule 56 of the

Federal Rules of Civil Procedure[1] was based on three reasons, to which the district court referred in its judgment order. It found that defendants were entitled to summary judgment as a matter of law for two of said reasons:

"(1) That the plaintiff has misused the patent [sic] in suit and comes into this court with unclean hands in that it presently is engaging in the packaged licensing of its patents by refusing to license less than all of its patents; and, in refusing to license less than all of the patents for less than the royalty rate charged for all patents;

"(2) That the plaintiff has misused the patent [sic] in suit and comes into this court with unclean hands by reason of the fact that it has violated the consent decree in the case of United States of America v. Libbey-Owens Ford Glass Co., et. al., cause No. 5239, in the United States District Court for the Northern District of Ohio, Western Division, in the above listed packaging practices."

(Plaintiff was a defendant named in the consent decree).

The court further found that defendants were not entitled to summary judgment on a third reason specified in their motion, which was that plaintiff had engaged in discriminatory licensing in violation of the consent decree.

The charges of packaged licensing of patents and the violation of the consent decree involved in such packaged licensing were alleged in the second amended answer of defendants and denied by plaintiff's reply thereto.

In support of their motion for summary judgment, defendants offered and the court received various affidavits and depositions. To prove the charge of packaged licensing, defendants took and offered to the court the deposition of plaintiff's vice-president, Robert Ingouf, who testified that licenses were issued by plaintiff to Libbey-Owens-Ford Glass Company, Pittsburgh Plate Glass Company, Eagle Convex Glass Specialty Co., and Permaglass, Inc., for practically the same number of patents. However, he also testified that plaintiff issued to the Blue Ridge Glass Corporation a license "not for the same patents, but for 24 patents, many more being in the Pittsburgh Plate Glass agreement."

Moreover, the record contains a letter by an attorney for plaintiff, offering to license an *individual* patent to Shatterproof Glass Corporation, but at the group license royalty.

As to the finding that plaintiff refused to license less than all for a royalty rate less than charged for all, the deposition of Ingouf revealed that plaintiff charged Blue Ridge Corporation a license fee of only 1¢ per square foot, while Libbey-Owens-Ford Glass Company and Pittsburgh Plate Glass Company were each paying 2¢ per square foot for the use of all of the patents collectively.

It is thus clear from the record that, assuming that there was some showing tending to sustain the reasons given by the district court for the entry of judgment because of packaged licensing, there was also the foregoing showing in Ingouf's deposition that plaintiff did not refuse to license less than all, or less than all at a royalty rate less than charged for the group of patents. In other words the showing of facts before the court was conflicting.

Moreover, there is no evidence that the seven[2] applicants who received plaintiff's standard license between 1947 and 1949, were forced to accept it. In fact there is no unequivocal evidence that *anyone*, *including defendants*, ever applied either to plaintiff or the federal district court at Toledo, Ohio, which entered the consent decree referred to in the summary judgment herein, for licenses and were refused. It seems clear that this failure

1. 28 U.S.C.A. Rule 56.

2. Defendants, in this court, contend that the record shows at least nine such agreements executed. If so, another conflict in the evidence exists.

of proof undermines the district court's holding which is based on a *refusal by plaintiff*. Although defendants never made any request for a license, the court below in effect held that the failure of plaintiff to grant a nonexistent request constituted a free license to defendants, who thereby were put in an advantageous position to compete with plaintiff's licensees.

As to the alleged violation of the consent decree in "above listed packaging practices", given as the second reason for the summary judgment, defendants rely on proceedings in a case in the United States District Court for the District of Delaware, American Securit Co. v. Shatterproof Glass Co., 154 F. Supp. 890, to which defendants were not parties. However, Judge Kloeb, *who entered the consent decree* in the court at Toledo, when Shatterproof was before him with an application for his determination of reasonable royalties to be paid by it, said:

"My interpretation of that section [XIV (c)] of the Decree would be this: that if a fellow wants the use of the patents and he makes application for their use and he can't agree with the patentee for fair rates for the use of the patents, then within sixty days the applicant has the authority under the Decree to apply to this Court for a hearing and ask the Court to fix the rates. I don't know of any such step that was taken. * * * I don't believe that the Decree was promulgated for the purpose of protecting a wrongdoer."

Speaking of a statement in a letter which plaintiff sent to Shatterproof that plaintiff did not "concede any obligation to apportion this royalty among the different patents", Judge Kloeb said:

"The Court can well see how an attempt to so apportion might result in discrimination: * * * *".

These views of the judge who entered the consent decree emphasize the complexity of the issues involved in the case at bar, a complexity the dissipation of which requires a thorough trial before the court where witnesses for one side may be cross-examined by the other side, all subject to the traditional safeguards in the ·law of evidence, as we shall now point out.

■ 2. It is fundamental that a summary judgment should be granted only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure, 28 U.S.C.A. rule 56. In Mitchell v. McCarty, 7 Cir., 239 F.2d 721, 723, we said:

"* * * It follows that issues of fact raised by pleadings and affidavits in a summary judgment proceeding may not be tried on the basis of affidavits. Campana Corporation v. Harrison, 7 Cir., 135 F.2d 334, 335."

From our examination of the entire record, we are convinced that, not only are there issues of material fact arising on the pleadings, but there are direct contradictions in the evidence upon those issues, as well as situations appearing from established facts where different inferences may be drawn. In fact, the interpretation of the evidence appearing in the form of affidavits and other documents is itself a controversial subject. Summary judgment is foreclosed in such a situation.

■ From the pleadings of the parties, as well as their briefs in this court, it appears that important questions of substantive law must eventually be decided. However, no court should attempt such a decision until all pertinent facts are ascertained. If the record shows, as we believe it does, that genuine issues of fact exist and that the evidence on those issues is conflicting, of uncertain weight, in part incompetent, and itself susceptible of various interpretations, only by a trial can the court ascertain the pertinent facts and move on to decide such questions of substantive law as those facts present. In such a situation entry of summary judgment is not the

proper method. Although summary judgment procedure is a praiseworthy timesaving device, and although prompt dispatch of judicial business is a virtue, denial of a trial on disputed facts is worse than delay. Mitchell v. McCarty, 7 Cir., 239 F.2d 721.

The pattern of facts upon which the district court entered judgment lacks both clarity and completeness. It has unclear parts, blind spots and sharp contradictions. It leaves the issues joined by the pleadings unresolved.

██ Moreover, defendants got certain material into the record by the most unusual means. While, on a motion for summary judgment, it is customary to consider facts set forth in affidavits, these facts must be personally known to the affiant.[3] It is the policy of rule 56(e) to allow the affidavit to contain evidentiary matter, which if the affiant were in court and testified on the witness stand, would be admissible as part of his testimony.[4] In Automatic Radio Mfg. Co. v. Hazeltine, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312, the court was considering a countermotion for summary judgment, which asserted that Hazeltine refused to grant a license under any one or more of its patents to anyone who refused to take a license under all. This averment was elaborated in the affidavit of petitioner's attorney in support of the motion. The court pointed out that the relevant portion, at least, of the affidavit did not comply with rule 56(e), which, as quoted in the footnote, reads:

"Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * "

Inasmuch as summary judgment procedure lacks the safeguard of cross-examination of an affiant, it is important that it be shown that he is competent to testify to the matters therein stated and that the facts to which he swears are admissible under the rules of evidence.[5] Likewise, testimony contained in depositions used in a summary judgment proceeding is subject to the rules of evidence, as referred to in rule 43(a) [6] governing admissibility.[7] These requirements were conspicuously violated in this case. For brevity, we refer to only a few instances.

██ (a) Defendants, in an attempt to prove misuse of patents by plaintiff, introduced their exhibit 5, and the court denied plaintiff's motion to strike it. This exhibit purports to be a *copy* of a page of a *brief* filed by *Shatterproof Glass Company* with the clerk of the United States District Court for the District of Delaware, in a suit brought by plaintiff *against Shatterproof*, American Securit Corp. v. Shatterproof Glass Corp., D.C., 154 F.Supp. 890. Appearing between parts of counsel's argument in the brief are several questions and answers said by the writer of the brief to have been set forth in Ingouf's deposition.

To bolster this unorthodox proceeding, the court below was presented with defendants' exhibit 6, which is an affidavit by an attorney McCoy, who says therein that he was present in New York City when Ingouf's deposition was taken and that affiant had entered an appearance for Shatterproof, on whose behalf the deposition was taken for use in the federal court *in Delaware*. McCoy further swears that "in compliance with a *verbal order* [8] of the latter court", the first por-

---

3. See Hummel v. Wells Petroleum Co., C.C., 111 F.2d 883, 886.

4. 6 Moore's Fed.Prac., 2331.

5. G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 231 F.2d 316, 318.

6. 28 U.S.C.A. Rule 43(a).

7. 6 Moore's Fed.Prac., 2019.

8. Emphasis supplied.

tion of the deposition was filed in the federal court in Delaware and that the deposition was taken before Jerry Pellis, *a qualified stenotypist reporter* and *notary public* in and for the state of New York.

McCoy does not in his affidavit or otherwise reveal how he knew these facts. However, he does swear that "in an *affidavit* contained on pages 269 and 270 of the deposition, *Jerry Pellis* certified that pages 108 through 266 inclusive of the deposition constituted *a true and correct record* of the testimony of the proceedings therein transcribed." [9]

Pellis' certificate was not produced in the trial court and, if it were, there is no showing as to the name or authority of the officer who administered the oath to Pellis or that Pellis' signature thereon was genuine. Of course plaintiff in the case at bar never had an opportunity to face Pellis or McCoy and cross-examine either of them.

If the purported evidence contained in Ingouf's alleged deposition is to be accepted for the purpose of obtaining summary judgment against plaintiff in this case, we must assume without proof, *inter alia*:

1—that *self-serving statements* in favor of Shatterproof made by its lawyers in a brief filed in the federal court in Delaware and there used against the plaintiff are true; [9]

2—that Ingouf's deposition, insofar as referred to, was correctly reproduced in the brief;

3—that Pellis was a qualified reporter and that he was a notary public authorized by the laws of New York;

4—that there existed some unexplained legal reason for not producing the original of his affidavit and the deposition.

We are not at liberty to make these assumptions.

9. Obviously these self-serving statements by Shatterproof's lawyers in the Delaware court are not legally competent for use against plaintiff in the case at bar.

(b) Defendants took the deposition of Gerard de Piolenc, an officer of plaintiff, and in this court they rely upon answers which he gave to their questions. It is axiomatic that the weight to be given to the testimony of any witness depends, in part, upon his knowledge of the things about which he is interrogated. He testified that he is an electrical engineer and that his present connection with plaintiff is as a director. Asked specifically if he was also a vice-president, he answered in the negative. When plaintiff's lawyer volunteered that the witness was a third vice-president of 'plaintiff, he admitted "Then, I am. I had forgotten that." He then gave testimony relied upon by defendants herein. Just how much weight the district judge gave to the testimony of this witness we do not know. Summary judgment procedure does not permit of the weighing of the testimony of witnesses taken on deposition by the adverse party. On the other hand matters going to the weight to be given the testimony of the various witnesses are peculiarly germane to a trial. At least it could there be argued that the testimony of a man, who is a vice-president of a corporation and either does not know it or forgot it, should be weighed in the scales and not perfunctorily given face value.

(c) Defendants introduced into the record an affidavit of attorney Mc-Coy, relating in summary form McCoy's understanding of what Vernon M. Dorsey (who, McCoy says, was the secretary of plaintiff) in his lifetime stated to Mc-Coy (Dorsey being deceased at the time of the hearing in the court below). Of course, if such a conversation took place and Dorsey was available at the time of the proceedings in the lower court, counsel would have been able, after consulting with him, to cross-examine McCoy if he appeared as a witness. The right of

cross-examination, however, was practically destroyed by Dorsey's death.

(d) To prevent undue length of this opinion, we refrain from commenting on other errors revealed by the record before us. There are many.

■ 3. Defendants having charged, as a defense, that plaintiff's licensing practices violated the consent decree entered in the federal court in Ohio, plaintiff contends that the "district court of Indiana had no power to construe the consent decree over which the district court in Ohio had retained jurisdiction." We are of the opinion, however, that the court below has authority to construe that decree, for the purpose of adjudicating the charge of misuse of patents based upon an alleged violation thereof. No cases to the contrary are cited by plaintiff, which selected the court below as a forum for its litigation. While plaintiff cites United States Gypsum Co. v. National Gypsum Company, 352 U.S. 457, 77 S.Ct. 490, 1 L.Ed.2d 465, that case is not directly in point. There, the court entering the decree was advised by petition for an injunction that U. S. Gypsum had filed patent infringement suits in federal courts in the northern district of Ohio and the district of New Jersey against some of its co-defendants in the decree. Thereupon the court enjoined the prosecution of those suits. These facts and other facts appearing in the opinion in the Gypsum case distinguish it from the case at bar. Neither plaintiff or defendants in the case at bar have asked the district court in Ohio to enjoin the present proceeding or the assertion of any defense set up therein, nor has that court in any way definitely asserted jurisdiction over the subject matter of this case. What, if anything, will occur in this respect in the future, we, of course, do not know.

Defendants made a motion to dismiss this appeal and we denied the motion with leave to renew it upon oral argument. During that argument defendants' counsel expressly disclaimed any intention of renewing the motion.

For the reasons hereinbefore set forth the judgment of the district court is reversed and the cause is remanded to that court for a trial and such other proceedings as may be proper.

Reversed and remanded.