COMMUNITY SAVINGS AND LOAN AS-
SOCIATION, a Wisconsin Corporation,
First American Savings and Loan Asso-
ciation, a Wisconsin Corporation, and
Wauwatosa Savings and Loan Associa-
tion, a Wisconsin Corporation, Plain-
tiffs,

v.

FEDERAL HOME LOAN BANK BOARD,
Thomas H. Bomar, Chairman of the
Federal Home Loan Bank Board, Grady
Perry, Jr., Member of the Federal Home
Loan Bank Board, and First Federal
Savings and Loan Association of Wis-
consin, Defendants.

MUTUAL SAVINGS AND LOAN ASSO-
CIATION OF WISCONSIN, Plaintiff,

v.

FEDERAL HOME LOAN BANK BOARD,
Thomas H. Bomar, Chairman of the
Federal Home Loan Bank Board, Grady
Perry, Jr., Member of the Federal Home
Loan Bank Board, and First Federal
Savings and Loan Association of Wis-
consin, Defendants.

Civ. A. Nos. 73–C–121 and 73–C–146.

United States District Court,
E. D. Wisconsin.

Jan. 31, 1978.

Clifford C. Kasdorf, Milwaukee, Wis., for plaintiffs, Community Sav. and Loan Ass'n and Wauwatosa Sav. and Loan Ass'n.

Edward A. Dudek, Milwaukee, Wis., for plaintiff, Mutual Sav. and Loan Ass'n of Wis.

Harold B. Shore, Harvey Simon and Steven J. Toll, Washington, D. C., for defendants, Federal Home Loan Bank Bd. and Its Individual Members.

David E. Jarvis, Milwaukee, Wis., for defendant, First Federal Sav. and Loan Ass'n of Wis.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiff savings and loan associations seek review of a decision of the defendant Federal Home Loan Bank Board ("Board") approving the application of First Federal Savings and Loan Association ("First Federal") to establish a branch office in the vicinity of the Mayfair Shopping Center, Wauwatosa, Wisconsin.

The plaintiffs—Community Savings and Loan Association whose office is located at 9210 West North Avenue, Wauwatosa, Wisconsin; First American Savings and Loan Association whose office is located at 10045 West Lisbon Avenue, Milwaukee, Wisconsin; and Wauwatosa Savings and Loan Association whose office is located at 7500 West State Street, Wauwatosa, Wisconsin—commenced this action on March 12, 1973. The plaintiff Mutual Savings and Loan Association of Wisconsin whose home office is located at 510 East Wisconsin Avenue, Milwaukee, Wisconsin, commenced its action on March 19, 1973. The two actions were thereafter consolidated by order of the Court on June 13, 1973, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and with the agreement of the parties.

Jurisdiction is based on the existence of a federal question and a controversy exceeding $10,000, as an action arising under the Fifth Amendment to the U.S. Constitution, the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. §§ 1461–64; 28 U.S.C. §§ 1331, 1337, 2201–02, and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Plaintiffs seek a declaratory judgment vacating Resolution 72–1161 of the Board, an injunction prohibiting the defendant First Federal from establishing or operating a branch office in the Mayfair Shopping Center environs; remand of the matter to the Board for reconsideration consistent with the Court's decision, or alternatively, for a trial de novo to determine the need for First Federal's proposed branch. The matter is before the Court on cross motions for summary judgment. Additionally, the plaintiffs have filed a motion to strike the affidavit of Edward A. Eckert. For the reasons stated hereafter, the plaintiffs' motion to strike the Eckert affidavit will be granted, plaintiffs' motion for summary judgment will be denied, and defendants' motion for summary judgment will be granted.

The material facts surrounding First Federal's application are not in dispute. On June 11, 1968, First Federal filed an application for permission to establish a branch office in the vicinity of the Mayfair Shopping Center in Wauwatosa, Wisconsin. The designated service area was identified in the application and supporting documents as being an area already served by " . . . ten savings and loan offices presently located within the boundaries of the immediate service area, plus two immediately adjacent to the immediate service area . . . ." The Board disapproved this application in Resolution No. 22,291, dated November 21, 1968, stating:

"RESOLVED that the application of the First Federal Savings and Loan Association of Wisconsin, Milwaukee, Wisconsin, dated June 6, 1968, for permission to establish a branch office at, or in the immediate vicinity of North Mayfair Road, between the intersection of West North Avenue and West Center Street, Wauwatosa, Wisconsin, is hereby disapproved, by reason of insufficient evidence of necessity for such branch office, and of its reasonable prospects for usefulness and success without undue injury to existing thrift and home-financing institutions."

Pursuant to the regulations of the Board then in effect, First Federal requested a hearing on its application, which was conducted in February 1969. Based upon the evidence and data presented at the hearing, the Board on April 24, 1969, issued its resolution No. 22,757, again denying the application and stating:

"FEDERAL HOME LOAN BANK BOARD, No. 22,757. Date: April 24, 1969.

"WHEREAS, Federal Home Loan Bank Board Hearing Order No. 190–B, dated January 7, 1969, provided for a hearing upon the application of the First Federal Savings and Loan Association of Wisconsin, Milwaukee, Wisconsin, for permission to establish a branch office at, or in the immediate vicinity of, North Mayfair Road, between the intersection of West North Avenue and West Center Street, Wauwatosa, Wisconsin; and

"WHEREAS, the said matter came on for hearing before a Hearing Officer for the Federal Home Loan Bank Board in Suite 610, 400 First Street, N.W. (Railway Labor Building), Washington, D.C., on Monday, the third day of February, 1969, at ten o'clock in the forenoon; and

"WHEREAS, the complete record of the cause and the merits of the application have been duly considered and it is determined that there is no necessity for the branch office in the community to be served, and that said branch office cannot be established in such locality without undue injury to properly conducted existing local thrift and home-financing institutions:

"NOW, THEREFORE, IT IS HEREBY RESOLVED That the application of the First Federal Savings and Loan Association of Wisconsin, Milwaukee, Wisconsin, for permission to establish a branch office at, or in the immediate vicinity of, North Mayfair Road, between the intersection of West North Avenue and West Center Street, Wauwatosa, Wisconsin, is hereby disapproved.

"By the Federal Home Loan Bank Board. s/Jack Carter, Jack Carter, Secretary."

A petition for reconsideration was then made by First Federal on May 3, 1969, which was also denied.

On February 25, 1972, First Federal again filed with the Board a further application for establishment of a branch office in the vicinity of the Mayfair Shopping Center, stating that ". . . The current proposed branch site and savings service area are essentially the same as those in the former application, except that the northeast service area boundary has been adjusted . . . [N]ine savings and loan associations [are] operating eleven facilities within or immediately adjacent to the boundary of the proposed branch service area." Pursuant to the regulations then in effect, protests in opposition to the branch were filed with the Board on behalf of the plaintiff associations: Community Savings and Loan Association ("Community"), First American Savings and Loan Association ("First American"), Wauwatosa Savings and Loan Association ("Wauwatosa"), and Mutual Savings and Loan Association of Wisconsin ("Mutual"). At the request of the protestants, oral argument was conducted in opposition to the application of First Federal. On October 3, 1972, the Board by its resolution No. 72–1161 conditionally approved the branch office of First Federal, stating:

"FEDERAL HOME LOAN BANK BOARD, No. 72–1161. Date: October 3, 1972.

"WHEREAS, by application, dated February 23, 1972, First Federal Savings and Loan Association of Wisconsin, Milwaukee, Wisconsin ("First Federal") seeks permission to establish a branch office at, or in the immediate vicinity of, the intersection of North Mayfair Road and West North Avenue, Wauwatosa, Milwaukee County, Wisconsin; and

"WHEREAS, certain local thrift and home-financing institutions have protected the said application, and the protestants were given the opportunity to submit, and have submitted, legal memoranda, economic data and other matter in opposition to the application; and

"WHEREAS, oral argument in this cause has been held on May 24, 1972, before the Board's Supervisory Agent, at which time First Federal, and all but one of the protestants, appeared and argued their respective cases; and

"WHEREAS, subsequent to the oral argument the protestants were permitted to make an additional written submission in support of the protests; and

"WHEREAS, the Board has determined that a necessity exists for the proposed branch office in the community to be served, that there is a reasonable probability of its usefulness and success, and that said branch can be established at such locality without undue injury to the protestants and any other properly conducted existing local thrift and home-financing institutions; and

"WHEREAS, in making the determination referred to above, the Board has considered all relevant matters including, among others, the following: (1) the size, population, composition, rate of growth, new housing starts, income level, savings potential and lending needs of the proposed service area, (2) the number of existing local thrift and home-financing institutions already serving the area, (3) the size, location and rate of growth of the protestants, and other local thrift and home-financing institutions in or near the service area, (4) the distance between First Federal's proposed branch office and the nearby offices of the protestants, and the size and rate of growth of the protestants located closest to the proposed branch office, (5) the necessity for another local thrift and home-financing institution to be located in, or near, the Mayfair Shopping Center, the number of existing institutions now located in, or near, the Center, and the potential usefulness, convenience and benefit of First Federal's proposed branch office to the shoppers and employees of the Center, and (6) the very substantial amount of existing savings and mortgage loans of First Federal arising out of the proposed service area; and

"WHEREAS, the record in this cause contains sufficient information to enable the Board to make the necessary determinations with respect to the above-mentioned matters; and

"WHEREAS, a principal objection of the protestants to the approval of the proposed branch office is that the establishment of such branch allegedly would be anticompetitive and/or monopolistic; and

"WHEREAS, the Board is of the view that the restraints of the antitrust laws are not applicable to the present situation which involves internal and not external expansion, and that even if such laws are deemed to be applicable, the establishment of the proposed branch would not be violative of law because: (1) the addition of the new branch would enhance, rather than lessen, competition in the relevant area; and (2) the new branch would not result in a monopoly or a restraint of trade in light of the very substantial existing competition provided by the protestants (and particularly the protestant—located closest to First Federal's proposed branch—which is among the largest savings and loan associations in Wisconsin), and the other institutions in or near the service area:

"NOW, THEREFORE, IT IS HEREBY RESOLVED that said application be, and hereby is, approved; provided that the exact location of such branch office is approved by this Board before such branch office is established; and provided further that such branch office is established not later than twelve months from the date of this approval.

"By the Federal Home Loan Bank Board. s/Eugene M. Herrin. Eugene M. Herrin, Assistant Secretary."

Plaintiffs have alleged three causes of action: that the Defendant Board's resolution of October 3, 1972, is inconsistent with, and contrary to, the established record and is arbitrary, capricious, and an abuse of the Board's discretion; that the Board has arbitrarily and capriciously refused to address itself to the anti-competitive effect of the proposed branch office in the metropolitan

Milwaukee savings and loan market; and that the Board's resolution of October 3, 1972, has denied the plaintiffs due process of law as guaranteed to them by the fifth amendment to the U.S. Constitution.

Plaintiffs have put forth numerous arguments in support of their position. First, they assert that judicial review requires some articulation by the agency of the reason and basis for its action. It is plaintiff's position that the Board's decision must stand or fall on the 17-page record before it when it passed on the application, rather than on the 382-page public record, which plaintiffs claim the Board never reviewed. Plaintiffs maintain that the 17-page administrative record before the Board did not support a determination that there was a community need for the First Federal Office, because the Board mistakenly equated the community's need with that of First Federal and its already existing customers. Plaintiffs also contend that the record did not justify a conclusion that the First Federal Office could operate without causing undue harm to Community, First American, and Wauwatosa, and that the Board's 1972 reversal of its 1968 and 1969 determinations without an explanation constitutes arbitrary and capricious agency action as a matter of law. Finally, plaintiffs argue that the Board did not evaluate the anticompetitive impact of First Federal's expansion program.

Defendant counters that the Board's decision was within its broad discretion and must be upheld if it has any rational basis, and that the Board's determination is supported by the record, which includes the so-called public record. Defendant asserts that the Board is under no duty to consider the antitrust or anticompetitive effect of First Federal's branch office, and even if it were, the Board met such duty by finding lack of undue injury. It is the Board's position that it was not required to issue formal findings of fact, conclusions of law, or an opinion in connection with First Federal's branch application.

■ Among the powers conferred upon the Board by § 5(a) of the Home Owners' Loan Act of 1933, as amended ("Act"), 12 U.S.C. § 1464(a), is responsibility for the organization, supervision and regulation of federal savings and loan associations. Although the Act itself contains no express provision granting the Board the power to authorize branch offices for federal associations, courts have consistently construed the Act as including such a power. *Lyons Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 377 F.Supp. 11, 16 (N.D.Ill. 1974), and cases cited therein. Further, such Act has been construed as vesting broad discretion in the Board when passing upon the merits of branch or similar applications. See, e. g., *Federal Home Loan Bank Board v. Rowe,* 109 U.S.App.D.C. 140, 284 F.2d 274 (1960); *Elm Grove Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 391 F.Supp. 1041 (E.D.Wis. 1975); *Bridgeport Federal Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 199 F.Supp. 410, 413 (E.D.Pa.1961), aff'd, 307 F.2d 580 (3rd Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963). Because the Board's decision on a branch application is neither an adjudication nor a rule-making proceeding, formal findings of fact, conclusions of law, or an opinion explaining the bases for its decision are not required under the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A). *Camp v. Pitts,* 411 U.S. 138, 140–141, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). See also *Guaranty Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 330 F.Supp. 470 (D.C.1971); *Lyons Savings and Loan Ass'n v. Federal Home Loan Bank Board,* 377 F.Supp. 11, 25 (N.D.Ill.1974).

■ The Board's decision on a branch application is, however, subject to judicial review and such review must be "meaningful" and "effective." *Hempstead Bank v. Smith,* 540 F.2d 57 (2d Cir. 1976). As stated in *Camp v. Pitts, supra,* which involved a decision made by the Comptroller of the Currency regarding certification of a national bank, the appropriate standard for review shall be:

"    .    .    whether the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5

U.S.C. § 706(2)(A). In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. . . . " (411 U.S. at page 142, 93 S.Ct. at page 1244).

The Court further held that, so long as some contemporaneous explanation of the agency decision exists, however curt it may be, the Comptroller's decision should "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review." (411 U.S. at page 143, 93 S.Ct. at page 1244). The rationale of *Camp v. Pitts* applies by analogy to the Federal Home Loan Bank Board. *Lyons Savings and Loan Ass'n v. Federal Home Loan Bank Board, supra; Guaranty Savings and Loan Ass'n v. Federal Home Loan Bank Board, supra.*

■ In the context of decisions made by the Comptroller or the Board, the arbitrary and capricious standard for judicial review, as interpreted, means only that there must be some rational basis in the administrative record for the decision reached. The more stringent standard of "substantial evidence" in a record, which is applied in certain other contexts, see, e. g., *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), does not apply to informal decisions made by federal banking agencies. *Sterling National Bank of Davie v. Camp,* 431 F.2d 514, 516 (5th Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 879, 27 L.Ed.2d 829 (1971); *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371 (8th Cir. 1974), cert. denied, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). As stated in *Winnetka Savings and Loan Ass'n v. Federal Home Loan Bank Board,* F.Supp. (No. 73–C–2820, N.D.Ill., Jan. 22, 1975):

" . . . [P]laintiffs assert that Board decisions are to be deemed arbitrary and capricious unless supported, on balance, by the entire record.

"The courts, however, have specifically rejected the substantial evidence test as the standard of review of administrative decisions with respect to the issuance of national bank and federal savings and loan charters in favor of the less stringent rational basis test. *Camp v. Pitts, supra.* Recognizing that decision on charter and branch applications has been committed by Congress to the broad discretion of the banking agencies, the Comptroller of the Currency as to national banks and the Board as to Federal Savings and Loans, the courts have limited the scope of their review essentially to questions of due process and have refrained from substituting their judgment for the agency's."

So long, therefore, as there is some evidence in the record which supports the Board's decision, and even though there might be more evidence in support of the contrary position, the judgment of the Board must be upheld. *First National Bank of Fayetteville v. Smith, supra.*

Next plaintiffs allege that the whole record which was before the Board when it made its decision on First Federal's application in 1972 was a 17-page administrative staff digest and not the 382-page public record which the Board asserts was considered. In an affidavit filed July 5, 1977, on behalf of the plaintiffs in support of their motion for summary judgment, Mr. Edward A. Dudek, one of the attorneys for the plaintiff, Mutual Savings and Loan Association, states:

"5 Upon information and belief, your affiant states, based upon his experience and knowledge, that as standard procedure the Board makes its decisions on branch office applications, including First Federal's 1972 re-application, based upon its review of the digests and recommendations prepared by the Supervisory Agent and the Office of Industry Development (and of other staff offices when appropriate); further your affiant states, based upon his experience and knowledge, that as standard procedure in branch application matters, including this re-application, the members of the Board do not read the application file composed of the submissions by the parties and the transcript of oral argument, such as the 382-page application filed in this case."

In contrast, the resolution of the Board dated October 3, 1972, refers to legal memo-

randa, economic data and other matter submitted by the protestants in opposition to the application, and to the oral argument held in the cause on May 24, 1972, and the resolution further states that, "in making the determination referred to above [on First Federal's application], the Board has considered all relevant matters. . . ." Defendant Board also asserted at oral argument held before this court on July 15, 1977, and at pages 12–13 of its memorandum in support of its motion for summary judgment that the Board's administrative record in this case consists primarily of: (1) First Federal's branch office application and the exhibits thereto filed on February 25, 1972; (2) a letter of protest dated April 19, 1972, from West Federal Savings and Loan Association, Milwaukee, Wisconsin; (3) a letter of protest with enclosures dated April 19, 1972, from Mutual Savings; (4) a letter of protest dated April 19, 1972, from counsel for Community Savings, First American Savings, and Wauwatosa Savings; (5) an analysis of the First Federal branch application prepared for protestant Mutual Savings by Financial Marketing Group, dated April 17, 1972; and (6) a transcript of the oral argument on First Federal's application held on May 24, 1972, before the Board's Supervisory Agent, at which counsel and representatives of First Federal and the plaintiffs appeared and participated; or in other words, the 382-page public record to which plaintiffs refer.

It is the judgment of this court that the record which it has before it for judicial review of the Board's branch application decision is the full 382-page so-called "public record." The burden of proof is on the plaintiffs in this action to show that the Board acted arbitrarily, capriciously, or otherwise not in accordance with law. While plaintiffs do not assert that the Board erred initially in considering only the 17-page administrative digest, assuming that it did so, we think, in view of the Board's contrary assertion, that the burden is also on the plaintiffs to show that the record which the Board in fact considered was something other than that which the Board now claims.

Mr. Dudek's affidavit does not satisfy this requirement. Information contained in an affidavit based "on information and belief" alone is not competent evidence to be considered in a motion for summary judgment. As stated in 6 Moore's Federal Practice § 56.22[1], at 1306 (2d ed. 1976), an evidentiary affidavit:

" . . . must be made on the personal knowledge of the affiant, set forth facts that would be admissible in evidence, and show affirmatively that affiant is competent to testify to the matters stated herein."

See also *Ashwell and Company, Inc. v. Transamerica Insurance Company,* 407 F.2d 762 (7th Cir. 1969); *Citizens to Preserve Overton Park v. Volpe,* 432 F.2d 1307, 1319 (6th Cir. 1970), rev'd on other grounds 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1972). The court *may* consider information contained in an affidavit based on information and belief in a summary judgment motion where the opposing party has not made any objection to its admissibility 6 Moore's Federal Practice § 56.22[1], at 1331–32 (2d Ed. 1976); *Klingman v. National Indemnity Co.,* 317 F.2d 850 (7th Cir. 1963). In *Klingman* the first notice given the court that objection was made to the affidavit was at the appeal stage. While defendants in this case made no formal objection to the consideration by the court of plaintiffs' affidavit, they did assert on several occasions, which are referred to above, that the record which the Board considered contained other information than the 17-page administrative staff digest. In view of the strong policy against consideration of information from an affidavit based only on information and belief in a summary judgment procedure, which policy derives from the lack of opportunity for cross-examination, *American Security Company v. Hamilton Glass Company,* 254 F.2d 889 (7th Cir. 1958) and in view of the defendants' counter-assertion as to what matter is contained in the record, the court feels that it is the better rule in this case not to accept as true the information contained in the affidavit. Therefore, there being no competent evidence to show that the whole record before the Board was not the 382-page public record, as the Board

claims, the court will consider that record in making its determination as to whether or not the Board acted arbitrarily, capriciously, or otherwise not in accordance with law when it granted First Federal's branch application.

In accordance with its duty to rule on branch applications for federal savings and loan associations, the Board has promulgated a set of regulations governing applications for and approval of branch plans. See 12 C.F.R. § 545.14. The apparent standards for the determination as to whether a branch office should be approved are derived from those stated in 12 U.S.C. § 1464(e) pertaining to charters and are stated in 12 C.F.R. § 545.14(c):

"*Application form; supporting information* . . . Information shall be furnished in support of the application . . . designed to show: (1) There will be at the time the branch is opened a necessity for the proposed branch office in the community to be served by it; (2) there is a reasonable probability of usefulness and success of the proposed branch office; and (3) the proposed branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions . . . ."

Plaintiffs assert that the record before the Board does not support its conclusion that these three criteria were met by First Federal's branch application.

■ As to the first criterion, "a necessity for the proposed branch office in the community to be served by it," plaintiffs assert that the Board misconstrued the meaning of this standard by viewing it in terms of *First Federal's* need for a branch office in the area and in terms of public *convenience*, rather than in terms of the *community's need* for the branch office. However, the Board stated in its decision of October 3, 1972, that it had considered the necessity for an additional savings and loan association to be located in the Mayfair Shopping Center, and it is the opinion of the court that there is some evidence in the record which supports the Board's finding of such necessity. Were the court reviewing the Board's decision on the merits, it

might reach a contrary result. As stated, however, the function of the court is limited to determining whether or not there is a rational basis for the Board's decision, i. e., whether the record contains any information which will support that decision. The record indicates that the sales volume at the Mayfair Shopping Center had increased from $36 million in 1963 to $48 million in 1967 to an estimated $60 million in 1971, and that in addition the center attracts residents from all over the Milwaukee metropolitan area. Although at the time First Federal's re-application was filed with the Board there were nine other savings and loan associations located within the boundaries of the designated primary service area and three more adjacent to that area, there was only one other savings and loan association actually located within the shopping center boundaries. It is the court's opinion that these factors alone provide a rational basis for a finding of necessity for the First Federal branch, to be located within the shopping center itself.

■ The record further indicates that as of December 31, 1971, First Federal had 6921 savings accounts held by residents in the primary service area totalling over $24 million and 667 mortgage loans totalling over $8.5 million. There was evidence to show that the area itself was an excellent source of untapped savings. For example, based on a study conducted by the U.S. Department of Commerce entitled *Survey of Current Business,* it appeared in the record that residents of the area would produce during 1972 a savings potential of $35 million, and employees in the commercial establishments would produce an additional savings potential of $10 million. The nine savings and loan associations already located in the area in 1972 had experienced a total increase in savings accounts from $608,889,000 in December, 1969, to $740,671,000 in December, 1971, ranging in percentage for individual institutions from 8.7% to 52.2%. On the basis of these factors and others set forth in the record, it is evident that at the time of the 1972 application there was "a reasonable probability of usefulness and success of the proposed branch office."

936

As to the third criterion, whether "the proposed branch office can be established without undue injury to properly conducted existing local thrift and home-financing institutions," "the governing regulatory standard is not mere 'injury' to the plaintiff but 'undue injury.'" *Elm Grove Savings and Loan Ass'n v. Federal Home Loan Bank Board*, 391 F.Supp. 1041 (E.D. Wis.1975). The growth experienced by the plaintiff-institutions between 1969 and 1972, the indications of large untapped sources of savings, and First Federal's extensive pre-existing penetration into the area all support the Board's finding that no undue injury would occur from granting First Federal's branch application.

Plaintiffs' final contention is that the Board failed to evaluate the anti-competitive impact of First Federal's expansion program. The Board asserts that it was under no obligation to do so, but the court need not decide that question. Assuming that the Board had such an obligation, the record indicates and the October 3, 1972, resolution states that the Board did consider the anti-competitive impact of the branch office and determined that competition would be enhanced were the application granted. Even in the 17-page administrative digest it is noted, first, that the proposed branch office would be located more than three miles from the nearest First Federal branch, facility, or home office, and second, that the branch would serve local area residents as well as visitors from the greater metropolitan area. Therefore, the court cannot as a matter of law hold that there was no evidence in the record to support the Board's determination concerning anti-competitive impact, and it finds that in fact the Board did consider the anti-trust implications of the application and that there is a rational basis in the record to support the Board's conclusion.

Plaintiffs have moved the Court to strike the affidavit of Edward A. Eckert and page 19 of the Board's brief filed June 9, 1977, which refers to and restates the content of the affidavit, on the basis that the affidavit and brief refer to matters which are subsequent to and therefore outside the administrative record which was before the Board in October of 1972, and those matters are thus beyond the review of this Court. The Court agrees. See *Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

For the foregoing reasons,

NOW, THEREFORE, IT IS ORDERED that the affidavit of Edward A. Eckert and page 19 of the defendant Board's brief filed June 9, 1977, be struck from the record.

IT IS FURTHER ORDERED that the motion of plaintiffs Community Savings and Loan Association et al., and of Mutual Savings and Loan Association of Wisconsin for summary judgment be denied.

IT IS FURTHER ORDERED that the motion of defendants Federal Home Loan Bank Board et al., for summary judgment be granted.