The **AMERICAN SECURIT COMPANY**,
Plaintiff,

v.

**SHATTERPROOF GLASS CORPORATION**, Defendant.

Civ. A. No. 1691.

United States District Court
D. Delaware.

Sept. 15, 1958.

On Motions to Dismiss and to Amend
Sept. 22, 1958.

H. Eugene Savery, Wilmington, Del., John L. Seymour (of Bauer & Seymour), New York City, and Joseph W. Burns (of Fulton, Walter & Halley), New York City, for plaintiff.

Caleb S. Layton (of Richards, Layton & Finger), Wilmington, Del., and William C. McCoy and William C. McCoy, Jr. (of McCoy, Greene & TeGrotenhuis), Cleveland, Ohio, for defendant.

STEEL, District Judge.

The Court has today signed an injunctive order[1] to which reference is made for a statement of the facts which gave rise to its issuance. The entry of the order was based upon the legal conclusions that the Court possessed the power to grant injunctive relief and that in the exercise of its discretion it should do so. The considerations upon which these legal conclusions were based are stated herein.

In Crosley Corporation v. Hazeltine Corporation, 3 Cir., 1941, 122 F.2d 925 it was held that the District Court in which a declaratory judgment action had been brought to adjudicate the invalidity and non-infringement of a defendant's patents had the power to, and in the exercise of its discretion should, enjoin the defendant from prosecuting an action begun 17 days later in another District Court for infringement of certain of the patents involved in the first suit, the parties being the same in both actions. This decision was based upon the view that it is important to litigants to have a single determination of their controversy, that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of subsequent litigation over the same subject matter, and that the issuance of an injunction would prevent the economic waste involved in duplicating litigation which would necessarily adversely affect the prompt and efficient administration of justice. Upon parallel facts the same conclusion was arrived at in Crosley Corporation v. Westinghouse Electric & Manufacturing Co., 3 Cir., 1942, 130 F.2d 474, certiorari denied 1942, 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 even though the second action was brought only one day after the first suit had been begun.

Here, unlike in the Crosley cases, it is not the plaintiff (Securit) who seeks to protect at an early stage of the case the jurisdiction which it has invoked. It is the defendant (Shatterproof) who seeks to have the plaintiff (Securit) prohibited from running away from the court of its choice long after a judicial pronouncement has been rendered upon a controlling aspect of the litigation. The principles of the Crosley cases therefore have *a fortiori* application to the situation at bar, and substantiate the power of the Court to grant injunctive relief and the wisdom of its doing so as a matter of discretion.

Securit argues that the Crosley cases are without application unless the same parties and issues are involved in both actions; and it points out that neither the United States nor the Hamilton Glass Corporation are parties to the Delaware litigation although both are parties in the Ohio proceeding. Furthermore, Securit asserts that the issues involved in Ohio are broader than those dealt with by Judge Leahy. These distinctions are not important. The injunction which has been issued is limited to the prevention of the relitigation between Securit and Shatterproof of the matters dealt with adversely to Securit by Judge Leahy. It does not foreclose Securit from litigating against the

[1] The injunctive order appears at page 818, post.

United States, Hamilton Glass Company, or anyone else any issues which it pleases. Nor does it foreclose Securit from litigating in Ohio against Shatterproof any matters other than those dealt with adversely to Securit by Judge Leahy in his opinion. Triangle Conduit & Cable Co. v. National Electric Products Corporation, 3 Cir., 1943, 138 F.2d 46 relied upon by Securit does not require the Court to deny injunctive relief of the limited scope which is indicated. Indeed, that decision, when read in the light of Triangle Conduit & Cable Co. v. National Electric Products Corporation, 3 Cir., 1942, 125 F.2d 1008, certiorari denied 1942, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 supports the propriety of the injunctive order which has been entered.

In Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 3 Cir., 1951, 189 F.2d 31, affirmed 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 it was held error for this Court to enjoin litigation in the Illinois District Court between a patentee and an alleged infringing manufacturer who were parties in Delaware and a customer of the alleged infringer which was not a party to the Delaware action. A mere reading of the opinion will disclose its several points of distinction from the case at bar. But if the test of determining precedence of judicial action stated in Kerotest is applied—viz., expedition in affording relief, it is clear that Securit should not be permitted to proceed against Shatterproof in Ohio to relitigate anew the issues upon which Judge Leahy has already spoken.

■ Securit resists the issuance of an injunction upon the asserted ground that Ohio has primary jurisdiction with which this Court should not interfere. But the jurisdiction which Ohio acquired by the initiation of the anti-trust action which eventuated in the Toledo decree in 1948 gave it no jurisdiction over Shatterproof. Even under Securit's theory the earliest time when the Ohio

Court acquired jurisdiction over Shatterproof was in July, 1955 when Shatterproof filed its application with the Ohio Court seeking a determination of a reasonable royalty for the patents in suit. While it may be assumed that some of the issues which the Ohio Court might have decided in connection with that application [1] were identical with those with which Judge Leahy dealt, still the submission of these issues to the Ohio Court was subsequent to the institution of the suit in Delaware and, in any event, the Ohio Court dismissed the application. In the order of dismissal jurisdiction was neither reserved over Shatterproof nor over the subject matter of Shatterproof's application. Securit's contention that the Ohio Court had primary jurisdiction of such kind as to foreclose the granting of injunctive relief by this Court is therefore untenable.

■ Securit attempts to make capital of the fact that no order has been entered upon Judge Leahy's opinion. This is of no moment. The opinion is not relied upon as a basis of res judicata or a collateral estoppel. Its significance is to show the advance point to which the patent misuse and Toledo decree violation issues have been litigated in Delaware. This is a consideration of obvious importance in determining whether an injunction should issue.

The power of the Court to grant injunctive relief is not negatived by United States Gypsum Co. v. National Gypsum Co., 1957, 352 U.S. 457, 77 S.Ct. 490, 1 L.Ed.2d 465. There it was held that the Court rendering an anti-trust decree had jurisdiction in the anti-trust action to construe the decree as between the parties to it, to enjoin litigation in other courts between such parties which involved a construction of the decree, and following a construction which would bar the other actions, to direct the plaintiffs therein to dismiss the same with prejudice. The Court did not hold directly or by implication that a court other

1. The application prayed *inter alia* that plaintiff be required to comply with the Toledo decree.

than that rendering an anti-trust decree is without power to construe the decree, or in the exercise of its discretion should refrain from doing so, when it has litigation before it between a party to the decree and a non-party thereto in connection with which the interpretation of the decree is pertinent and no interpretive relief antedating the suit has been sought from the anti-trust court. That is the situation which confronts this Court. Under comparable circumstances it was held in American Securit Company v. Hamilton Glass Company, 7 Cir., 1958, 254 F.2d 889, 895 that jurisdiction to construe the Toledo decree did not rest exclusively with the Ohio Court but that the Indiana District Court was empowered to do so. This conclusion, it held, was not inconsistent with the Gypsum decision.

The Ohio Court, having rendered the Toledo decree, is of course peculiarly competent to construe it and to determine whether the activities of Securit have been in derogation of its terms. But this is only one factor to be considered in determining whether in the exercise of its discretion the Court should direct the issuance of an injunction. This factor is substantially outweighed in the case at bar by the duplication of judicial effort and the inconvenience and expense to the parties which will necessarily be occasioned if Securit, which has chosen this Court as the forum for litigating its rights, should be permitted to proceed against Shatterproof in Ohio for a determination thereof long after Judge Leahy's opinion has been rendered upon an issue critical to the patent infringement aspect of the litigation in this Court.

Undoubtedly, a timely application for the construction of an anti-trust decree made to the Court rendering the decree will, in some instances, as illustrated by the circumstances of the Gypsum case, avoid multiple litigation and conflict of decisions. This consideration is scarcely relevant to the pending motion in view of the current status of the Delaware litigation and the long delay by Securit

in soliciting the aid of the Ohio Court after previously invoking this Court's jurisdiction.

The restraint which has been granted is narrower than that sought by Shatterproof's motion. The relief prayed for in the motion, counsel for Shatterproof concede, was unduly broad. The scope of the relief which has been granted corresponds to that which counsel for Shatterproof requested at the argument. Particularization in phraseology of the order is accounted for by the requirement of Rule 65(d), Fed.Rules Civ.Proc. 28 U.S.C.

## Injunctive Order.

And Now to Wit this 15th day of September, 1958 the motion of defendant (hereinafter "Shatterproof") for a preliminary injunction enjoining plaintiff (hereinafter "Securit") from prosecuting its application filed July 9, 1958 in the United States District Court for the Northern District of Ohio, Western Division, in Civil Action No. 5239 until termination of the instant action in this Court and in the appropriate Courts of Appeal, having come on to be heard, and the same having been maturely considered, the Court, pursuant to Rule 52(a) and upon the basis of the documents filed in support of and in opposition to said motion and other undisputed facts appearing of record in the instant action, hereby sets forth the findings of fact and conclusions of law which constitute the grounds of the Court's action upon said motion:

## Findings of Fact

1. The complaint herein was filed on March 7, 1955. It alleges that Shatterproof has infringed four patents belonging to Securit and that Shatterproof has been guilty of acts of unfair competition.

2. The answer of Shatterproof was filed herein on May 10, 1955. After denying the material allegations of the complaint, it alleges as affirmative defenses that Securit is barred from enforcing its patents because it has misused them by illegally extending their

monopoly and because Securit has failed to comply with an anti-trust decree, designated the "Toledo decree", which was entered on October 30, 1948 by the District Court of the United States for the Northern District of Ohio, Western Division, in Civil Action No. 5239 (hereinafter "the Ohio Court") in an action brought by the United States against Libbey-Owens-Ford Glass Company and others including Securit (but not Shatterproof) for alleged violations of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq. The answer filed by Shatterproof contained a counterclaim seeking a declaratory judgment of invalidity, non-infringement and patent misuse. Violation by Securit of the Toledo decree was alleged in the counterclaim but no declaratory judgment relief with respect thereto was specifically prayed for.

3. On June 13, 1955 Securit filed a motion in the instant action to dismiss the defenses of patent misuse and Toledo decree violation. The motion was denied on May 25, 1956 in an opinion letter.

4. On July 25, 1955 Shatterproof filed an application in the Ohio Court seeking a determination by it of a reasonable royalty for the patents sued upon in the instant action, for an order requiring the Securit to comply with the Toledo decree, and for such other relief as the Ohio Court deemed proper.

5. On September 14, 1955 Securit filed a motion in the instant action to temporarily and permanently enjoin Shatterproof from prosecuting its application in the Ohio Court.

6. On October 6, 1955 the United States filed in the Ohio Court a "Petition of the United States for Order for the Construction and Enforcement of the Final Judgment" in which it alleged that the action of Securit in bringing the present infringement suit against Shatterproof was barred by and instituted to attempt a defeat of the Toledo decree. It prayed that Securit be permanently enjoined from taking any action in any Court to prevent an applicant for

a license from exercising any rights conferred by the Toledo decree.

7. On October 7, 1955 the United States intervened in the present action and filed a "Representation of the Interest of the United States" in which, among other things, it asked this Court to refrain from taking any further action pending a decision by the Ohio Court upon the petition of the United States filed therein.

8. On October 10, 1955 this Court entered an order denying the motion of Securit to restrain Shatterproof from prosecuting the application in the Ohio Court and staying the instant case until after a hearing and determination by the Ohio Court of the petition of the United States.

9. On October 19, 1955 the Ohio Court, after a hearing, delivered an oral opinion in which it reviewed the correspondence between Securit and Shatterproof which had preceded the bringing of the instant action. It then referred to the subsequent action by Shatterproof in applying to the Ohio Court to fix a reasonable royalty rate and said:

"It is somewhat like a little fellow who annoys his neighbor's boy, taunts and berates him, and finally puts a stick on his shoulder. When the other fellow knocks it off he runs to mamma and hides under her skirts.

"I don't believe I want to accept jurisdiction under these circumstances. It seems to me the Court is being used as an alternative recourse, as a last resort."

10. On December 13, 1955 the Ohio Court dismissed the petition of the United States and the application of Shatterproof and stated in the preamble of its order:

" * * * it appearing, upon said consideration of the correspondence between Securit and Shatterproof Glass Corporation relative to the licensing of Securit's patents, that the application of Shatterproof Glass Corporation filed July 25, 1955 for

determination of reasonable royalty by this Court represents an alternative recourse following the institution by Securit of an infringement action against Shatterproof in the District of Delaware; and the Court having concluded that it should not accept jurisdiction of said application under such circumstances, * * * "

11. On December 19, 1955 Shatterproof filed a motion in the Ohio Court for a new trial or, in the alternative, to reopen the case.

12. On January 20, 1956 Securit filed in the instant action a "Motion to Proceed" based upon the occurrences in the Ohio action. The motion alleged in part:

"That the orderly process of this case in the U. S. District Court for Delaware before the Hon. Paul Leahy, U.S.D.J., be resumed, and that the motions pending be set for immediate hearing.

"Inasmuch as both parties hereto, and the Anti-Trust Division, were present at the hearing before Judge Kloeb, and took full part therein, as shown in the Record, and as the claims of both were dismissed by that court, for the reasons clearly stated in the certified "Opinion of the Court", further delay in setting the said motions for hearing would work a severe hardship on plaintiff;

"It would not serve the ends of justice to subject one who seeks relief in this court to delay while the defendant conducts harassing actions in other jurisdictions.

"It is the established rule that the court first having jurisdiction restrains the litigants from the conduct of harassing actions elsewhere. That rule was not adhered to in this case because of the informal, and we believe improper, request of the Anti-Trust Division, but that was a special circumstance which no longer exists.

"Judge Kloeb dismissed the defendant with severity and contempt.

After such a dismissal, there can be no valid objection to a prompt resumption of the proceedings here."

13. On February 8, 1956 an order was entered by the Ohio Court which read:

"This day this cause came on to be heard upon the application of Shatterproof Glass Corporation for a new trial in the above case, or in the alternative, to reopen the case and grant applicant the opportunity of presenting additional evidence and argument in support of its application and upon consideration thereof, it is

" 'Ordered that such motions be and they hereby are overruled.' "

14. On March 1, 1956 this Court granted Securit's motion to proceed and vacated the provision in its order of October 10, 1955 which had stayed further action in the instant case.

15. On December 26, 1956 Shatterproof filed a motion for summary judgment to dismiss the patent infringement counts and a supporting brief. The brief urged patent misuse and violation of the Toledo decree as grounds for dismissal. On February 12, 1957 Securit filed its brief in opposition to the motion for summary judgment.

16. On February 26, 1957 a hearing was had on Shatterproof's motion for summary judgment. On July 19, 1957 Judge Leahy rendered an opinion sustaining the motion for summary judgment. The opinion is reported in American Securit Company v. Shatterproof Glass Corp., D.C., 154 F.Supp. 890, 898, and is the subject of a note, "Mandatory Package Licensing: A New Patent Misuse", in 44 Va.Law Rev. 727. In brief, Judge Leahy held that Securit was barred from enforcing its patents against Shatterproof because by its misuse of its patents it had illegally extended the monopoly of the patent grant and because it had violated provisions of the Toledo decree. The concluding paragraph of Judge Leahy's opinion stated:

"For the foregoing reasons, defendant's motion for summary judgment as to Counts I through IV of the Complaint is granted. An appropriate order may be submitted but only after there is a determination by trial, or otherwise, of the remaining counts in plaintiff's complaint."

No order upon the opinion has been entered.

17. On September 10, 1957 Securit filed a "Motion for Rehearing and that Summary Judgment be Set Aside". This motion was denied by Judge Leahy on September 18, 1957.

18. On January 17, 1958 Chief Judge Wright denied a second motion for a rehearing which Securit had filed.

19. On July 9, 1958 Securit purporting to act under the jurisdiction reserved clause of the Toledo decree, filed in the Ohio Court a "Petition of the American Securit Company for Construction of and Directions for Carrying out Final Judgment". The petition referred to Judge Leahy's decision granting Shatterproof's motion for summary judgment and to a decision by the United States District Court for the Southern District of Indiana holding that Securit was barred from maintaining a patent infringement suit against Hamilton Glass Company because Securit had misused its patents and had violated the Toledo decree[2]. Thereafter the petition alleged in Paragraph 32:

"The Delaware and Indiana Courts have misinterpreted this Court's decree and have ruled that Petitioner violated the decree by (1) licensing all its patents in a single package, and (2) refusing to license less than all the patents for less than the royalty charged for the package."

The petition prayed for the entry of an order of construction of and directions for carrying out the Toledo decree which would contain, among others, the following provisions:

"1. This Court has the sole jurisdiction to determine whether conduct of Petitioner, a party defendant in this action, has violated said Consent Decree."

\* \* \* \* \* \*

"21. There has been no evidence that Petitioner has violated either the antitrust laws or said Consent Decree by its licensing practices with respect to said patents."

\* \* \* \* \* \*

"23. None of the acts of Petitioner have been shown to be wrongful; none of the requirements of the standard form license depart from the provisions of the Consent Decree to an extent requiring that Petitioner be denied the judicial process of this Court or any court."

20. On August 19, 1958 the Ohio Court entered an order directing the United States, Hamilton Glass Company, Inc., and Shatterproof, to show cause on September 16, 1958 why the petition of Securit should not be granted and an order entered in accordance with its prayers.

21. On September 3, 1958 Shatterproof filed its motion for preliminary injunction in this Court to enjoin Securit from further prosecuting its petition in the Ohio Court until termination of the action in this Court and the appropriate Courts of Appeal. The motion was heard by this Court on September 11, 1958 upon the basis of the papers attached to the motion, papers filed by Securit in opposition to the motion, Defendant's Exhibits 1 and 2 introduced in evidence at the hearing, and a stipulation of the parties that the oral opinion of the Ohio Court rendered on October 19, 1955 might be considered in connection with the order of that Court entered on December 13, 1955.

22. The extensiveness and nature of the activities of the parties in this Court

2. The decision of the District Court was reversed in American Securit Company v. Hamilton Glass Company, Inc., 7 Cir., 1958, 254 F.2d 889.

**822**

is shown by the docket which contains 164 entries prior to the filing of the motion for preliminary injunction by Shatterproof. A transcript of those entries is attached to this order as Exhibit A.

23. The first time that the Ohio Court acquired jurisdiction over Shatterproof was on July 25, 1955 when it filed its application for a determination of royalty fees on certain of Securit's patents. The first time that the jurisdiction of the Ohio Court was invoked to pass upon the questions dealt with by Judge Leahy in his opinion granting Shatterproof's motion for summary judgment was on July 9, 1958 when the "Petition of the American Securit Company for the Construction of and Directions for Carrying out Final Judgment" was filed.

24. Securit has voluntarily selected this Court in which to litigate its grievances against Shatterproof. Since May 10, 1955 when Shatterproof's answer was filed Securit has known that Shatterproof would assert the patent misuse and Toledo decree violation defenses. Not until 3 years later did Securit invoke the aid of the Ohio Court to resolve these questions. In the meantime, almost a year before the Securit petition had been filed with the Ohio Court, Judge Leahy had rendered an opinion dealing with some, at least, of the precise points which Securit now seeks to have the Ohio Court determine as between itself and others including Shatterproof. Securit advances no understandable reason for its delay in seeking relief in the Ohio Court. The conclusion is warranted that Securit's action insofar as it is directed against Shatterproof represents a belated attempt to obtain a decision from the Ohio Court at variance with Judge Leahy's opinion.

25. Unless a preliminary injunction issues, Shatterproof will be irreparably injured and damaged; for if Securit proceeds in Ohio to relitigate against Shatterproof the questions dealt with in Judge Leahy's opinion, unwarranted duplication of effort and expense to the parties will be the inevitable result.

26. Securit's activity in Ohio, in the aspects indicated, will, unless enjoined, likewise adversely affect the economic administration of justice in that duplication of judicial effort will necessarily follow.

## Conclusions of Law

■ 1. This Court has the power to issue an injunction enjoining Securit from relitigating against Shatterproof in Ohio the matters which Judge Leahy has already dealt with in his opinion.

■ 2. In the exercise of its discretion the Court should grant such an injunction.

It Is Therefore Ordered, Adjudged and Decreed that until further order of this Court, the plaintiff, The American Securit Company, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, be and they hereby are restrained and enjoined from taking any action under "Petition of The American Securit Company for Construction of and Directions for Carrying out Final Judgment" filed on July 9, 1958 in the action styled "In the District Court of the United States for the Northern District of Ohio, Western Division,—United States of America, Plaintiff, vs. Libbey-Owens-Ford Glass Company, et al., Defendants—Civil Action No. 5239", or otherwise in said action, which will seek a determination, finding or any other type of adjudication or judicial expression as against Shatterproof which is in conflict with any one or more of the following views expressed by Judge Leahy in American Securit Company v. Shatterproof Glass Corporation, D.C.D.Del.1957, 154 F.Supp. 890, viz.:

■ (a) Securit has a policy of group or package licensing of its patents under which it will grant no license unless it is under all its patents for a fixed royalty.

(b) This policy is one of unlawful coercion and is contrary to public policy.

(c) This policy coerces licensees into accepting unwanted patents and thus the

patent monopoly has been illegally extended.

■ (d) Securit has failed to purge itself of the misuse of its patents and is therefore barred from enforcing them against Shattterproof in this Court (C. A. 1691).

■ (e) This Court has jurisdiction to determine whether Securit has misused its patents and whether Securit has violated the Toledo decree.

(f) The terms of the standard form of license agreement employed by Securit violate the terms of the Toledo decree.

■ (g) The Toledo decree violation constitutes a defense to the action instituted by Securit against Shatterproof in this Court (C.A. No. 1691) in its patent infringement aspects.

(h) Securit is barred from enforcing its patents in the action instituted by it against Shatterproof in this Court (C.A. No. 1691).

It Is Further Ordered, that the provisions of this order shall become effective upon the giving of security by defendant Shatterproof the sum of $500 conditioned for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained hereby.

It Is Further Ordered, that counsel for defendant Shatterproof shall serve upon counsel for plaintiff Securit a copy of this order and file with the Clerk of this Court proof of such service, and such service shall be deemed good and sufficient service.

On Motions to Dismiss and to Amend.

The action is before the Court upon the motion of defendant to dismiss Counts V and VI of the complaint and upon the motion of plaintiff to amend the complaint. In addition to disposing of these motions the opinion contains an explanation why the Court, acting under Rule 54(b), 28 U.S.C., has today entered a final judgment dismissing Counts I through IV, and acting similarly will today enter a final judgment dismissing Counts V and VI, notwithstanding the existing fringe issues as yet undecided.

Motion to Dismiss Counts V and VI

The jurisdiction of the Court to adjudicate counts V and VI will first be considered. Underwood v. Maloney, 3 Cir., 1958, 256 F.2d 334, 340.

The complaint contains six counts. Counts I to IV each allege plaintiff's ownership of a different patent and the defendant's infringement thereof. Counts V and VI each purport to state a cause of action for unfair competition related to and growing out of the patent infringement.[1] Jurisdiction over the patent infringement claims, sometimes herein denominated "federal claims", is conferred by 28 U.S.C. § 1338 (a). Since both parties are Delaware corporations, the unfair competition claims must find jurisdictional support, if at all, under 28 U.S.C. § 1338(b). It provides:

"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

Under this section jurisdiction of an unfair competition claim in a non-diversity case exists only when it is joined with a claim under the patent laws which is both "substantial" and "related".

No case has been found in which a formula has been fixed for determining whether a patent, trademark or copyright claim is sufficiently substantial for purposes of § 1338(b) to provide jurisdictional support for an unfair competition claim. The problem was discussed in American Auto Ass'n v. Spiegel, 2 Cir., 1953, 205 F.2d 771, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 138, 98 L. Ed. 391 with specific reference to § 1338 (b), and in Pure Oil Co. v. Puritan Oil Co., Inc., D.C.D.Conn.1941, 39 F.

---

1. Par 5, Complaint.

Supp. 68, reversed in Pure Oil Co. v. Puritan Oil Co., Inc., 2 Cir., 1942, 127 F.2d 6 prior to the enactment of § 1338 (b), but no guide for distinguishing between a substantial and unsubstantial claim was prescribed in either case.

Section 1338(b) is a reflection of the doctrine enunciated in Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 589, 77 L.Ed. 1148.[2] There it was held in a non-diversity case that where a single cause of action is alleged based upon both a federal ground of copyright infringement and a common law ground of unfair competition, jurisdiction over the non-federal ground exists if the federal question "is not plainly wanting in substance." Here again no attempt was made to fix the point at which jurisdictional substantiality is reached.

 Presumably § 1338(b) means nothing more than the claim under the patent law must satisfy the test of substantiality generally exacted when a jurisdictional challenge is asserted in a federal court. In such instances the question is whether the claim jurisdictionally assailed is "obviously without merit" or its unsoundness " 'clearly results from previous decisions' " of the Supreme Court. Levering & Garrigues Co. v. Morrin, 1933, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062. Jurisdiction to adjudicate is wanting only where the federal claims stated in the complaint are so unsubstantial as "to be frivolous, or * * * plainly without color of merit". Binderup v. Pathe Exchange, 1923, 263 U.S. 291, 306, 44 S.Ct. 96, 98, 68 L.Ed. 308. If it appears that a plaintiff is "not really relying upon the patent law for his alleged rights" then the claim does "not really and substantially involve a controversy within the jurisdiction of the court"; otherwise jurisdiction exists regardless of whether the claim ultimately be held good or bad.

The Fair v. Kohler Die & Specialty Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716.

 Judged by these standards, it is clear that the claims asserted by plaintiff under the patent laws are substantial. The complaint alleges patent infringement in conventional terms. No evidence has been adduced to indicate that the claims are frivolous or colorable or contrary to controlling decided cases. The fact that in the case at bar it has been held that the patents are not enforceable because of their misuse and plaintiff's actions in violation of an anti-trust decree to which it was a party (American Securit Company v. Shatterproof Glass Corp., D.C.1957, 154 F. Supp. 890, rehearing denied Sept. 18, 1957 and Jan. 17, 1958)[3] does not deprive the patent claims of their jurisdictional substantiality. Schreyer v. Casco Products Corp., 2 Cir., 1952, 190 F.2d 921, 923–924, certiorari denied 1952, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683. This is conceded by defendant.[4]

 Are the unfair competition claims of Counts V and VI related to the patent claims within the meaning of § 1338(b)? The test of § 1338(b) relationship is whether the non-federal claim constitutes a separate and distinct cause of action from the federal claim, or whether the two claims are simply advanced as separate grounds to support a single cause of action. Where the latter situation prevails, the claims bear a sufficiently close relationship to give the Court jurisdiction to adjudicate the non-federal as well as the federal claim. Hurn v. Oursler, supra; Hook v. Hook & Ackerman, Inc., 3 Cir., 1956, 233 F.2d 180, 183–184; Darsyn Laboratories v. Lenox Laboratories, D.C.D.N.J.1954, 120 F.Supp. 42, 53–54, affirmed 3 Cir., 1954, 217 F.2d 648. This rule is often easier to state than it is to apply.[5]

2. Kaplan v. Helenhart Novelty Corporation, 2 Cir., 1950, 182 F.2d 311, 312.

3. The opinion is the subject of a note "Mandatory Package Licensing: A New Patent Misuse" in 44 Va.Law Rev. 727.

4. Supplemental brief in support of motions to dismiss Counts V and VI of the complaint, filed September 10, 1958—at p. 7.

5. The Second Circuit has wrestled long and agonizingly with the jurisdictional relationship problem when unfair compe-

Count V alleges that defendant feigned an interest in taking a license under plaintiff's patents whereas in fact it had no intention of doing so, and that plaintiff's deception was used as a cover for defendant's surreptitious infringement and to induce plaintiff to withhold investigating defendant's activities until certain patents had expired and others were approaching their termination date.[6] Count V alleges that by virtue of defendant's infringement plaintiff's other licensees have lost production and plaintiff has lost not only the royalties which would have been paid upon such production but has been deprived of the good will of its licensees whose markets have been thus unfairly invaded by defendant. While Count V does not expressly so allege, it is implicit in the allegations that defendant's deception caused plaintiff to forebear instituting action to protect its patent rights which it otherwise would have begun.

Count VI repeats the allegations of Count V and alleges that by virtue of defendant's wrongful acts plaintiff has lost an engineering fee for the installation of its patented processes commensurate with that which plaintiff has theretofore charged licensees for the use of its patents.

The owner of a patent acquires the right to exclude others from making, using or selling the invention of the patent for a period of 17 years. 35

U.S.C. § 154. The patent thereby confers upon the owner a monopoly limited in time to the patented invention. The gist of Counts I to IV is the alleged invasion by defendant of this monopoly. The charges of patent infringement contained in Counts I to IV are likewise embodied by reference in Counts V and VI. But the latter counts go further. They charge that plaintiff was fraudulently induced to forego asserting against defendant its rights as a patent owner because of defendant's fraud and deception. An intimate interlocking relationship between Counts I to IV and Counts V and VI is therefore manifest. In Hook v. Hook & Ackerman, Inc., supra, the Court said at page 184 of 233 F.2d, "The source of the stated unfair competition was completely separable from the patent case * * *". Just the opposite is true in the case at bar. Here the patent infringement and unfair competition claims are comparable to the charges involved in Darsyn Laboratories v. Lenox Laboratories, supra, wherein pendent jurisdiction was sustained to adjudicate a claim that defendant had unlawfully converted trade secrets of the plaintiff relating to the patented processes which defendant was charged with infringing.

It is of course true that some of the proof required to substantiate Counts V and VI, i. e., proof of the so-called spurious negotiations carried on by defendant with the intention of forestalling action

---

tition claims have been joined with patent, trade-mark and copyright claims in non-diversity cases: Lewis v. Vendome Bags, 1939, 108 F.2d 16, certiorari denied 1940, 309 U.S. 660, 60 S.Ct. 514, 84 L. Ed. 1008; Treasure Imports v. Henry Amdur & Sons, 1942, 127 F.2d 3; Musher Foundation v. Alba Trading Co., 1942, 127 F.2d 9, certiorari denied 1942, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517; Zalkind v. Scheinman, 1943, 139 F.2d 895, certiorari denied 1944, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; Derman v. Stor-Aid, 1944, 141 F.2d 580, certiorari dismissed 1944, 323 U.S. 805, 65 S.Ct. 25, 89 L.Ed. 643; Kleinman v. Betty Dain Creations, 1951, 189 F.2d 546, which hold that federal and non-federal claims are not related; Cutting Room

Appliances Corp. v. Empire Cutting Machine Co., 1951, 186 F.2d 997; Paramount Industries v. Solar Products Corp., 1951, 186 F.2d 999; Schreyer v. Casco Products Corp., 1951, 190 F.2d 921, certiorari denied 1952, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683; Telechron, Inc., v. Parissi, 1952, 197 F.2d 757; Maternally Yours, Inc. v. Your Maternity Shop, Inc., 1956, 234 F.2d 538, which hold that the federal and nonfederal claims are related.

6. Plaintiff points out in its brief that the instant action was not begun until after the expiration of Eckerd Patent No. 2,093,040 (Count III) and until Mosmieri Patent No. 2,131,406 (Count I) had almost expired.

by plaintiff—will not be germane to the patent infringement counts. But this in itself does not prevent both claims from comprising a single cause of action. No hard and fast rule can be laid down as to the extent of evidentiary identity which must exist to bring a federal claim and a non-federal claim within the single cause of action concept. The question is always one of degree. Zalkind v. Scheinman, 2 Cir., 1943, 139 F.2d 895, 900, certiorari denied, 1944, 322 U.S. 738, 64 S.Ct. 1055, 88 L. Ed. 1572. And it is forcefully argued by Judge Clark in his dissenting opinion in Musher Foundation v. Alba Trading Co., 2 Cir., 1942, 127 F.2d 9, 11, certiorari denied, 1942, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517, that complete identity of facts needed to prove a federal and non-federal claim should not be required to bring the claims within the unitary cause of action concept but that a substantial amount of overlapping testimony should suffice. This is seemingly recognized in Darsyn Laboratories v. Lenox Laboratories, supra. The proof there required to substantiate the unfair competition charge that defendant had purloined trade secrets relating to plaintiff's patent processes unquestionably required some proof beyond that pertinent to the patent infringement charge. Since at bar the patent infringement is an integral part of the unfair competition counts, the proof required to substantiate all counts must in large measure overlap.

■ Accordingly, I hold that the so-called unfair competition claims alleged in Counts V and VI are not separate and distinct causes of action from the patent claims alleged in Counts I to IV. On the contrary, when Counts V and VI are taken in conjunction with each of the respective patent claims, they, together with each such patent claim, constitute a single cause of action. The claims for unfair competition are therefore sufficiently related to the patent infringement claims to come within the jurisdiction of this Court under § 1338(b).

■ Jurisdiction to adjudicate Counts V and VI having been determined, the question remains whether substantively those counts allege valid causes of action. As stated, both counts charge that defendant has infringed plaintiff's patents. It was defendant's deception in simulating a desire to take a license which, according to the complaint, lulled plaintiff into deferring infringement action to its injury. It has now been determined, however, in this very litigation that plaintiff is not entitled to enforce its patents against defendant, and a final judgment has been entered under Rule 54(b) dismissing Counts I to IV. This fact must be recognized even though ordinarily the sufficiency of a complaint should be determined solely upon the basis of the pleaded facts. Since it has been adjudged that plaintiff cannot enforce its patents against defendant, it is clear that defendant's alleged deception constituted no actionable wrong. Unless plaintiff was legally entitled to enforce its patents against the defendant, defendant's alleged guile in inducing plaintiff to forebear action constituted no invasion of any right possessed by plaintiff. Furthermore, if Counts V and VI were held to state good causes of action without regard to the patent infringement charges as plaintiff contended at the argument,[7] then Counts V and VI would be dismissible because of lack of jurisdiction. On the stated hypothesis Counts V and VI would be so clearly unrelated to Counts I to IV that § 1338(b) would be of no jurisdictional help.

■ Plaintiff argues that Counts V and VI, if not alleging a good cause of action of unfair competition, nevertheless states a valid cause of action sounding in fraud, duplicity or bad faith. But the substantive infirmity of Counts V and VI is not cured by the manner in which they are characterized.

A final judgment will be entered under Rule 54(b) dismissing Counts V and VI of the complaint.

7. Transcript of argument, September 11, 1958, pp. 107–108.

## Motion to Amend the Complaint

The proposed amendment to the complaint withdraws charges of infringement of two patents and substitutes charges of infringement of two other patents. Otherwise the proposed amendment is substantially the same as the original complaint.

During the argument plaintiff conceded that if the patent misuse and the anti-trust decree violations are valid defenses to the infringement charges made in the original complaint, they would likewise be valid defenses to the infringement charges made in the proposed amendment.[8]

The unfair competition charge in the proposed amendment is substantially identical with that alleged in the original complaint. Since for the reasons previously stated in this opinion no valid unfair competition cause of action has been alleged in the original complaint, the proposed amendment, if permitted, would be similarly defective. Under these circumstances the Court is warranted, in the exercise of its discretion, in denying leave to file the amendment, Stephens v. Reed, 3 Cir., 1941, 121 F.2d 696, 699. The motion to amend is therefore denied.

An order will be entered accordingly.

## The Entry of Final Judgments Pursuant to Rule 54(b)

Acting under Rule 54(b) I have to-day entered a final judgment granting the motion of defendant for summary judgment addressed to Counts I to IV and dismissing those Counts. Acting under similar authority I propose to enter a final judgment dismissing Counts V and VI of the complaint for failure to state a cause of action. A word of explanation for my actions appears desirable.

The judgments referred to will completely dispose of the litigation except with respect to the following matters:

(a) A motion to dismiss the counterclaim is pending. The counterclaim seeks a declaratory judgment of invalidity, non-infringement and misuse of the patents sued on. The misuse issue was settled by the judgment dismissing Counts I to IV. This judgment likewise probably makes moot the invalidity and non-infringement issues, but I am reluctant to dispose of the counterclaim without giving counsel an opportunity to be heard. In any event, if the issues of invalidity and non-infringement have not been rendered moot, they are so completely unrelated to the matters adjudged by the judgments as to make it undesirable to delay further giving the judgments finality status.

(b) Plaintiff has one or more motions for costs and attorneys fees incurred in connection with pre-trial discovery. The parties agree that it is desirable that these be decided at the end of the litigation.[9] These motions will involve limited considerations unrelated to the merits of the final judgments.

The final judgment which has been entered dismissing Counts I to IV reserves jurisdiction to the Court to pass on these two matters. The final judgment dismissing Counts V and VI will also do so.

Summary judgment dismissing Counts I to IV was sustained by opinion over a year ago. Plaintiff asserts its desire to obtain an early review of that decision. This is made possible by the final judgments. They will, in my opinion, expedite a final disposition of the litigation and, in the event of a reversal of either or both of the judgments, the issues for trial will have been constructively defined. The entry of the judgments, it is believed, is not inconsistent with the *caveat* in Panichella v. Pennsylvania R. Co., 3 Cir., 1958, 252 F.2d 452.

---

8. Transcript of argument on September 11, 1958, p. 122.

9. Transcript of argument, September 11, 1958, pp. 124–125.