**ROHM & HAAS COMPANY, Plaintiff,**

v.

**CHEMICAL INSECTICIDE CORPORA-
TION and Joseph Lamberta,
Defendants.**

**Civ. A. No. 1754.**

United States District Court
D. Delaware.

Feb. 27, 1959.

Arthur G. Connolly (of Connolly, Cooch & Bove), Wilmington, Del., and John F. Bergin, of counsel, Philadelphia, Pa., for plaintiff.

C. Edward Duffy, Wilmington, Del., Martin Fleit and Jim W. Gipple (of Stevens, Davis, Miller & Mosher), Washington, D. C., for defendant Chemical Insecticide Corp.

Irving Morris (of Cohen & Morris), Wilmington, Del., for defendant Lamberta.

STEEL, District Judge.

The following matters are before me for decision: (1) motion of plaintiff for an injunction and summary judgment, (2) objections of plaintiff to defendants' interrogatories and requests for admissions of fact, (3) motion of plaintiff to dismiss defendants' second counterclaim, and (4) motion of defendant Lamberta for summary judgment.

### Motion of Plaintiff for Injunction and Summary Judgment.

In an action brought by plaintiff against Roberts Chemicals, Inc. (hereinafter "Roberts") in the United States District Court for the Southern District of West Virginia, it was held that sales of fungicidal materials of the kind here involved infringed the patent here in suit, and that the patent was valid and enforceable. Defendants at bar were not parties to the West Virginia suit. Plaintiff contends, however, that Chemical Insecticide Corporation (hereinafter "C.I. C."), one of the defendants in the instant action, actively participated in and exercised joint control with Roberts over the defense of the West Virginia action. For this reason, plaintiff asserts, C.I.C. was in privity with Roberts in the West Virginia action and thus is bound by the West Virginia judgment. Furthermore, plaintiff argues that Lamberta, the other defendant in the instant action, is merely an agent for C.I.C., that he has no personal interest in either the West Virginia or present action, and that since C.I.C. is bound by the West Virginia judgment, Lamberta is also bound by it.

There is evidence in the form of affidavits and depositions which, if believed, would support the following findings by a trier of the facts:

Some time after the present suit was begun, Fike, president of Roberts, called Livingston, president of C.I.C., and stated that he was involved in a patent infringement suit with Rohm & Haas (undoubtedly the West Virginia action), and that the attorneys which he had been using "in the Michigan case" [1] were not doing as good a job as he thought possible. Fike asked Livingston if Livingston had any objection to Fike contacting the C.I.C. attorneys to see if he (Fike) could get them to handle the case. Livingston said that he saw no objection to this since he could not determine any adverse interest between Roberts and C. I. C. Subsequently, Roberts employed Stevens, Davis, Miller & Mosher to act for it in the West Virginia action. This is the same law firm which was and is representing C.I.C. in the instant action. The Davis firm has treated the subject matter of the Roberts and C.I.C. cases separately, has billed each of its clients only for the services rendered for that client's own benefit, and neither client has been billed for services performed for the benefit of the other.

Prior to the Roberts trial, a member of the Davis firm got in touch with Livingston and asked if it would be possible for C.I.C. to do some experimental work to determine certain facts which the attorneys desired to have for use in the Roberts case. Livingston told Sherry, an officer of C.I.C., to work with the attorneys in running the tests and gave Sherry blanket instructions to cooperate in the defense of the Roberts case in any way that the attorneys requested.

Sherry, who was a qualified chemist, was asked by the attorneys to run experiments and to testify as an expert in the Roberts case. Sherry did so. He did not testify as an agent of C.I.C., and he

---

1. This case has not been identified.

did not control, consult with, contribute to, or assist in the defense of that lawsuit in any way other than by testifying as an expert witness. The testimony which Sherry gave was authorized by Livingston and Sherry stayed throughout the Roberts trial under authorization from Livingston.

The depositions which the Roberts attorneys took of the Rohm & Haas people were attended by Livingston and Sherry on behalf of C.I.C. As the Roberts trial progressed, Sherry called Livingston once from West Virginia and Livingston asked how the case was going. When Sherry returned Livingston again very briefly went into the progress of the case and what was to be done. Neither Livingston nor Sherry discussed what should be said in the Roberts briefs in order to present the Roberts case to the best advantage.

Livingston was vitally interested in the progress of the Roberts suit.

C.I.C. did not contribute financially to the defense of the Roberts suit. The subject was not discussed by Fike with Livingston, or with any one else. C.I.C. did not try to control the defense of the Roberts action in any way.

Following the decision in favor of Roberts by the West Virginia District Court [Rohm & Haas Co. v. Roberts Chemicals, Inc., 142 F.Supp. 499],[2] C.I.C. sent a telegram to its distributors advising them that in the "patent infringement suit brought against Chemical Insecticide Corporation by Rohm & Haas", the District Court had declared the patent invalid.

 The foregoing facts must, for purposes of the present motion, be taken to be true. The purpose of a motion for summary judgment is to determine whether issues of fact exist, not to resolve those issues if they do exist. Plaintiff argues, however, that to prevent summary judgment fact issues must be "genuine". This is true. This means that they cannot be frivolous, unsubstantial or lacking in *bona fides;* and that under some circumstances, at least, mere formal denials or general allegations which do not show the facts in detail are not sufficient to prevent the award of summary judgment. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 472–473. The facts detailed above are not violative of these principles.

 Under the law stated in Carson Inv. Co. v. Anaconda Copper Mining Co., 9 Cir., 26 F.2d 651, certiorari denied, 1928, 278 U.S. 635, 49 S.Ct. 32, 73 L.Ed. 551, and American Law Institute, Restatement, Judgments, § 84, Comment (e), relied upon by plaintiff, it is clear that summary judgment is not warranted. These authorities recognize that, to establish privity for purposes of *res judicata*, it is not enough that a nonparty should have aided the party of record by appearing as a witness, supplying it with funds for the defense, or cooperating in the defense. Something more is required. Control, either by the nonparty alone, or in conjunction with the named party, is indispensable. Nor are other cases cited by plaintiff of help to it. In Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 1941, 120 F.2d 82, 84, 139 A.L.R. 1, privity was held to exist when the defendant in the second suit admitted that "it retained counsel to conduct the defense on behalf of the dealer and paid the entire expense of the defense". In Miller v. Liggett & Myers Tobacco Co., C.C.E.D.Mo.1881, 7 F. 91, 92–93, control was defined as the right to make motions, offer evidence, cross examine witnesses, or take an appeal; and the Court said that one "who contributes money for the purpose of employing counsel, and carrying on a litigation, under a contract with a party to the record, must of necessity" have these rights. Under the standards of these cases control cannot be inferred in the present action in the face of unequivocal statements that none was exercised. Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550, certiorari de-

2. This was later reversed by the Court of Appeals, 4 Cir., 245 F.2d 693.

nied, 1950, 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605, and Reo Motor Car Co. v. Gear Grinding Mach. Co., 6 Cir., 1930, 42 F. 2d 965, involved the defense of actions by trade associations by means of funds supplied by their members and are inapposite on their facts.

It may be, as plaintiff argues, that for some purposes control is a legal conclusion which the Court must determine from the conduct of the parties. But for purposes of the present motion and upon the basis of the present record, the concept of control in and of itself has a sufficiently factual cast as to require C.I.C.'s denial that it controlled the West Virginia action to be accepted as a fact. The interest shown by and activities of Livingston and Sherry in the Roberts action are not inconsistent with the dictation by Roberts of all defense tactics and policies.

 Considering the evidence in the light most favorable to defendants, as I must at this juncture, it is clear that C.I.C. is not bound by the West Virginia judgment against Roberts. Since this is so, no basis exists for holding that Lamberta, as the alleged agent of C.I.C., is bound by the judgment. The affidavit filed by Lamberta states that he was not a party to the Roberts suit, was never consulted about it, did not pay any money to anyone concerning it, and had no connection with it in any way.

It is to be hoped that if the *res judicata* defense is again advanced, the parties will be prepared to supply the Court with their views on the question of the applicability of state as against federal law as it relates to the privity question. This is the "interesting intellectual question" which was posed in Caterpillar Tractor Co. v. International Harvester Co., supra, 120 F.2d at page 85.

Plaintiff's motion for summary judgment is denied.

Plaintiff stated at the argument that if its motion for summary judgment was denied, its motion for an injunction would necessarily fail. Plaintiff's motion for an injunction is therefore denied.

### Objections of Plaintiff to Defendants' Interrogatories and Requests for Admissions of Fact.

Insofar as these objections are based upon the *res judicata* effect of the West Virginia judgment, the objections are overruled. Both sets of objections, however, assert the additional ground of irrelevancy, and the objections to interrogatories say further that plaintiff should not be required to disclose to defendants, as competitors of plaintiff, the facts inquired about. It is impossible to intelligently evaluate these objections without further argument. Unless within five days the attorney for plaintiff advises me that he wishes to be heard on the objections, I shall overrule them all.

### Motion of Plaintiff to Dismiss Defendants' Second Counterclaim.

Defendants jointly have filed two counterclaims. The first seeks a declaratory judgment that the patent sued on is invalid, unenforceable because of misuse, and not infringed. The second purports to allege a cause of action for unfair competition based upon the wrongful interference by plaintiff with the businesses of defendants. Plaintiff has moved to dismiss the second counterclaim because of lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted.

 Plaintiff is a Delaware corporation; defendant C.I.C. is a New York corporation; and defendant Lamberta is a Delaware resident. Since there is no diversity of citizenship between plaintiff and all defendants, 28 U.S.C. § 1332(a) (1) will not provide a jurisdictional basis for the counterclaim. Osthaus v. Button, 3 Cir., 1934, 70 F.2d 392; Ackerman v. Hook, 3 Cir., 1950, 183 F.2d 11. Jurisdiction of the second counterclaim exists, if at all, under 28 U.S.C. § 1338(b) which reads:

"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition *when*

*joined with a substantial and related claim under the copyright, patent or trademark laws."* [3]

The claim alleged in the first counterclaim, with which the second counterclaim has been joined, is a "substantial" claim arising under the patent laws.[4] See American Securit Co. v. Shatterproof Glass Corp., D.C.D.Del. 1958, 166 F.Supp. 813, 823–824. Thus the real question is whether the unfair competition claim is "related" to the first counterclaim. The second counterclaim purports to allege two different types of unfair competition. The first is the publication by plaintiff of untrue, libellous and disparaging statements about the defendants' products. These acts, if they occurred, have no relationship to the patent counterclaim. The evidence required to support these charges of unfair competition will be completely different from the evidence on the patent issue. These issues in the two counterclaims are not related. Insofar as the second counterclaim alleges libellous disparagement of plaintiff's product, it purports to charge a type of common law unfair competition over which this Court has no jurisdiction under § 1338(b), or otherwise.

The second type of unfair competition alleged in the second counterclaim is "plaintiff's unlawful and unwarranted actions in attempting to dominate the unpatented and unpatentable salts of ethylene bistithiocarbamic acid". This suggests a theory of unfair competition comparable to that which was sustained in Farquhar Co. v. National Harrow Co., 3 Cir., 1900, 102 F. 714. Defendants charge that plaintiff's actions were "unlawful and unwarranted" is presumably based upon the contention that the patent which is the subject of the first counterclaim, is invalid, unenforceable, or not infringed. The trial of this phase of the second counterclaim will necessarily involve a consideration of a large part of the same evidence as a trial of the first counterclaim will entail. In the limited aspect indicated the second counterclaim is related to the first counterclaim within the meaning of § 1338(b) and hence is within the jurisdiction of the Court. See American Securit Co. v. Shatterproof Glass Corp., supra, 166 F.Supp. at pages 824–826.

The second counterclaim will be dismissed in its entirety with leave to defendants to reallege the portion thereof within the jurisdictional scope of § 1338 (b); without prejudice, however, to the right of plaintiff, if it so desires, to move to dismiss the amended counterclaim for failure to state a cause of action. This latter point, although raised by the present motion to dismiss, has not been considered since neither party has thus far briefed or argued it.

### Motion of Lamberta for Summary Judgment.

Lamberta is a farmer. Prior to and since November 4, 1953 when Re. 23,742 in suit issued, he had been using and selling chemical materials for controlling the fungus growth on potatoes. Lamberta's activities since November 4, 1953 are alleged by plaintiff to constitute both infringement and contributory infringement of the processes claimed in Re. 23,742. These consist of the application to living plants of various specified types of salts to control fungus growth. At the argument plaintiff's attorney expressly disclaimed any charge of infringement, direct or contributory, against any act by Lamberta which antedated November 4, 1953.

Re. 23,742 contains no claim which is in the original patent. This fact, coupled with Lamberta's activities which antedated the issuance of Re. 23,742, so Lamberta argues, gives him the right to continue to use and sell the chemical material free from interference by plain-

---

3. Italics supplied.

4. Plaintiff states that the declaratory judgment counterclaim is not a "claim" with-

in the meaning of § 1338(b), but admitted that it could find no authority either in support of or in opposition to its position.

tiff. This argument rests upon the second paragraph of 35 U.S.C. § 252 which provides:

"No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practice, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue."

The patent in suit covers a process—not a product. The first sentence and one-half of the second sentence of 35 U.S.C. § 252 appears not to relate to a patented process. The only reference to a patented process occurs in the last half of the second sentence. Here discretion is conferred upon the Court to provide such relief as equity and good conscience requires when a process practiced prior to the issuance of a reissued patent is continued thereafter. Without additional evidence I cannot tell to what extent, if any, Lamberta should be permitted to continue with the practice against which the complaint is directed, if plaintiff is otherwise entitled to prevail.

Lamberta's motion for summary judgment is denied.