E. B. R. CORPORATION, a Delaware corporation, Defendant Below, Appellant,

v.

PSL AIR LEASE CORPORATION, a Delaware corporation, and Chan-Air, Inc., a Massachusetts corporation, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Nov. 20, 1973.

**894**

Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant below, appellant.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, and Frank L. Bate, of Shanley & Fisher, Newark, N. J., for plaintiffs below, appellees.

HERRMANN, Chief Justice, and CAREY and DUFFY, Justices, sitting.

DUFFY, Justice:

This is an appeal from a summary judgment entered by the Superior Court for plaintiff, PSL Air Lease Corporation (PSL), a Delaware corporation, in an action on a guaranty agreement and a promissory note.[1]

**I**

E.B.R. Corporation (EBR), a Delaware corporation (defendant), was owned by Edwin, Brooke and Robert Matlack, three brothers who served as its directors. EBR owned a controlling interest in Flying W Airways, Inc. (Flying W), a New Jersey corporation. The Matlack brothers were also directors of Flying W.

In 1969 Flying W leased two aircraft and certain aircraft engines from plaintiff. EBR guaranteed flying W's performance under the leases and executed, as co-maker, a promissory note to PSL.

Flying W had financial difficulties and eventually became the subject of a reorganization proceeding under Chapter X of the Bankruptcy Act in the United States District Court for the Eastern District of Pennsylvania. In Re Flying W Airways, Inc., E.D.Pa., 341 F.Supp. 26 (1972). During that proceeding the existence of a refinancing agreement among PSL, Flying W and others was litigated and the Court determined that there was no such agreement. 341 F.Supp. at 67, 68, 72, 75.

After Flying W defaulted, PSL brought an action in Superior Court against EBR on the note and the guaranty agreement. EBR defended solely on the basis of the refinancing agreement; if there was an agreement as EBR alleged, then, Flying W was not in default and, therefore, EBR is not liable to plaintiff. Arguing that EBR was collaterally estopped from asserting the existence of such an agreement, PSL moved for and was granted summary judgment.

In legal terms, the single question on appeal is whether EBR is bound by the doctrine of collateral estoppel to the finding by the Federal Court that no such refinancing agreement was made.

**II**

Under Delaware law a judgment in one cause of action is conclusive in a subsequent and different cause of action as to a question of fact actually litigated by the parties and determined in the first action.[2] Winkler v. Balantine, Del.Supr., 254 A.2d 849 (1969); Tyndall v. Tyndall, Del.Supr., 238 A.2d 343 (1968); Petrucci

---

1. Judgment was also granted to Chan-Air, Inc., a Massachusetts corporation and a wholly-owned subsidiary of PSL; all references herein to PSL include Chan-Air, Inc., where factually pertinent.

2. Bankruptcy is an *in rem* proceeding and a party is free to withdraw from such litigation and abandon the *res*. With respect to the *res*, however, a judgment is conclusive upon all persons who have an interest in it. But a judgment in such a proceeding does not bind personally and is not conclusive as to a fact determined, except between persons who have actually litigated that factual question. Restatement, Judgments § 73.

v. Landon, Del.Super., 9 Terry 491, 107 A. 2d 236 (1954); see also Restatement, Judgments § 68. Briefly stated, the three elements necessary to a collateral estoppel are: (1) a determination of fact; (2) in a prior action; (3) between the same parties.

The first two requirements present no problem in this case. There is a question of fact common to both this case and the bankruptcy proceeding and it is simply this: was there an agreement to refinance the debt? It is undisputed that this question was actually determined in the prior action and that the Court found that there was no such agreement. And so we here focus on the third requirement of collateral estoppel: was the prior determination made between parties who are parties here? In other words, was EBR a party to the determination within the meaning of and for purposes of the estoppel rule? This leads, of course, to a review of what EBR actually did in the prior litigation.

### III

■ Initially we observe that by statute EBR had a right to be heard on all matters in the Chapter X proceedings, 11 U.S.C. § 606,[3] and it exercised that right as to some of them. It is conceded, however, that EBR did not actually litigate the issue of fact as to the refinancing agreement in the sense that it participated directly in the trial to the time of judgment; it was permitted to withdraw from the case before that issue was tried and determined.[4] But it does not follow that EBR is a stranger to the judgment. On the contrary, we think it is bound because the rule does not require that a surety participate in prior litigation to the time of final judgment in order to be controlled by it.

■ The "actual-litigation" requirement has special definition in a claim against a surety. Participation in actual litigation is required but participation to the point of final determination is not. The law is that if a surety "participates" in the action against his principal, he is concluded as to issues therein decided against his principal. Massachusetts B. & Ins. Co. v. Robert E. Denike Inc., 3 Cir., 92 F.2d 657 (1937); Herzog v. Des Lauriers Steel Mould Co., E.D.Pa., 46 F.Supp. 211 (1942); see also Stearns, Laws of Suretyship § 9.31 (5 ed. 1951). If a surety participates in an action against the principal, he is concluded as to issues therein decided against the principal, or issues which could have been raised, even though suit against him was dismissed before trial. 72 C.J.S. Principal and Surety § 261.

■ It is undisputed that EBR guaranteed Flying W's performance and signed (as co-maker) the note to PSL, so the critical question is whether EBR "participated" in the reorganization proceedings to a point sufficient to invoke the operation of the rule. We think it did. And in saying this we note that in *Denike,* supra, the Third Circuit found participation by the surety when an engineer whom it employed was at the trial on its orders and merely arranged for the presence of witnesses requested by counsel for the principal. He was not involved in the trial in any way. But, said the Court, what he did amounted to "participation".

Here, EBR's direct participation in the bankruptcy case far exceeds that found sufficient to bind in *Denike.* Thus, in ad-

---

3. 11 U.S.C. § 606 provides in pertinent part:
 "§ 606. Persons entitled to hearings
 The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter . . . ."
 EBR was a stockholder and creditor of Flying W. As such, the right conferred

was absolute and unlimited. 6A Collier on Bankruptcy ¶ 9.23.

4. We note that in the Federal Court Judge Becker warned EBR that it might be bound by the doctrines of *res judicata* or collateral estoppel if it withdrew.

dition to attending the pretrial conference, counsel appeared on behalf of EBR with respect to the following matters:

(a) petition by Trustees for a turnover order to obtain $500,000 held by certain banks;

(b) petition by Trustees to sell real estate upon which EBR held a mortgage;

(c) petition by Trustees to sell a certain Sabreliner aircraft;

(d) petition by Trustees to cancel insurance on a certain aircraft;

(e) petition by a bank to withdraw proceeds from the sale of certain real estate;

(f) petition by Trustees, their attorneys and accountants for interim compensation.

And, of special significance, counsel for EBR states in his affidavit that in the Federal Court case he attended the full depositions of Stuart H. Brown, Vice President of Girard Bank (Girard), William Van Norden, Senior Vice President of Girard, and Joseph R. Johnson, Vice Chairman of the Farmers Bank of Delaware (Farmers). Counsel for EBR also attended the deposition of O.H.P. Baldwin, Honorary Chairman of the Board of Farmers, and Fraser Noble, President of PSL. These individuals and the institutions they represented were integrally involved in the alleged refinancing plan. And the affidavit of counsel for PSL states that each and every one of the foregoing depositions dealt exclusively with the question of the existence and consequences of the alleged agreement.

It is worth noting that EBR also had the benefit of attendance at depositions by counsel for Flying W; in his affidavit counsel states that

"Our purposes [i. e., those of his firm] for attending other depositions [i. e., other than those of the President of Flying W] were two-fold:

(a) To accommodate the request of Paul Welsh, Esquire, counsel for E.B.R. Corporation in the present action, that we be present in order to give him the benefit of our knowledge of relevant facts . . . . "

It thus appears from the record that EBR participated in the Federal Court case not only as to matters in which it had a direct interest but also by attendance at and participation in depositions which were taken for the purpose of discovering facts from key witnesses concerning the refinancing agreement. Certainly, under these circumstances, it would be unfair to now permit EBR to relitigate the refinancing agreement issue.

EBR chiefly relies on Kramer v. Morgan, 2 Cir., 85 F.2d 96 (1936), for the proposition that where a principal is sued by a creditor, the surety has no duty to defend the action and, not being charged with the defense of the action, he is not bound by the judgment. That case, however, is not on point because the Court did not even consider "participation" by the surety in the prior litigation, as we have here and as the Third Circuit had in *Denike.*

Rohm & Haas Company v. Chemical Insecticide Corp., D.Del., 171 F.Supp. 426 (1959), another case upon which EBR relies, is a patent suit not involving a principal-surety relationship.

## IV

Because of the nature and extent of EBR's participation in the reorganization proceedings, we agree with the Superior Court that EBR's involvement was sufficient to satisfy the "actual-litigation" requirement of our law. We reaffirm the principles enunciated in *Winkler, Tyndall* and *Petrucci,* and abandon any language or implication to the contrary which may be found in Acierno v. Trzuskowski, Del. Supr., (No. 8, 1972—7/28/72). We hold that EBR's activities in the bankruptcy ac-

tion, particularly by participating in pre-trial discovery and related activities involving the refinancing agreement, were such as to constitute "participation" under the principal-surety application of the actual-litigation rule. As a result, EBR is collaterally estopped from asserting existence of the refinancing agreement in Superior Court.

\* \* \* \* \* \*

The judgment of the Superior Court is affirmed.